## STATE OF CONNECTICUT *v.* MICHAEL CHIARIZIO
## (3610)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 11—decision released August 26, 1986

*Maxwell Heiman,* with whom was *William J. Tracy, Jr.,* for the appellant (defendant).

*F. Kent Sistare, Jr.,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Frank Ianotti,* assistant state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of three counts of professional gambling in violation of General Statutes § 53-278d (b), three counts of using a telephone to transmit and receive gambling information in violation of General Statutes § 53-278d (a), and one count of possession of gambling records in violation of General Statutes (Rev. to 1979) § 53-278c (e). His conviction resulted in part from the introduction into evidence of tape recordings of his conversations, over a telephone located at a bar known as The Ivy Hill Lounge (the lounge), which were intercepted pursuant to a judicially authorized wiretap. The court denied the defendant's motions to suppress as evidence the tape recordings of his conversations. The principal issues

are: (1) whether a telephone leased to a bar and made available for local calls to its patrons is a public telephone facility within the meaning of General Statutes § 54-41d (7); (2) whether General Statutes § 54-41e requires more from the judicial panel issuing a wiretap order than a written statement, based on the supporting affidavit and application, specifying in the language of the statute the findings required by the statute; and (3) whether the state's attorney for a judicial district is barred by federal law from applying for a wiretap order. The defendant also raises three evidentiary claims, one of which involves the nature and timing of the statutory requirement that tape recordings of the intercepted conversations be sealed. We find no error.

The facts are not in dispute. Pursuant to General Statutes § 54-41b, the state's attorney for the judicial district of Hartford-New Britain[1] applied to a judicial wiretap panel for permission to intercept the telephonic communications of the defendant and other unknown persons over telephone facility number 666-4653, located at the lounge, in Newington, described as a commercial location. Attached to the application and specifically incorporated by reference was the affidavit of Trooper John S. Drescher.

Drescher's affidavit disclosed, inter alia, that the main business of the lounge was the service of food and of alcoholic beverages. The affidavit also stated that telephone company records revealed that telephone facility 666-4653 was located within the lounge premises, that it was leased to the business, and that there were two extensions to the facility within the lounge. The affidavit further disclosed that there were three telephones located on or behind the bar and in the

[1] General Statutes § 54-41b provides in pertinent part that a wiretap application may be made by "[t]he chief state's attorney or the state's attorney for the judicial district in which the interception is to be conducted . . . ."

kitchen, all being extensions of number 666-4653, and that the defendant was using these telephones to engage in professional gambling and to transmit and receive gambling information.

The application and affidavit were submitted to the wiretap panel of three judges, which ordered "the interception of the wire communications of [the defendant] and other unknown persons, and transmitted over facility no(s). 666-4653, located at 244 Hartford Avenue, Newington, Conn., The Ivy Hill Lounge." The order contained the following language: "The panel, pursuant to Section 54-41d, of the General Statutes, has unanimously determined on the basis of the facts submitted by the applicant in [Drescher's affidavit] that there is probable cause to believe that" the nine findings required by General Statutes § 54-41d exist. The nine findings of probable cause made by the panel essentially tracked the statutory language of General Statutes § 54-41d. The seventh finding, which corresponded to General Statutes § 54-41d (7), was as follows: "(7) if the facilities from which the wire communication is to be intercepted are public, a special need exists to intercept wire communications over such facilities (if applicable)."

The wiretap order was executed, resulting in three reels of tape recordings containing the defendant's conversations over the telephones in the lounge. The defendant filed three separate motions to suppress his intercepted conversations. The first claim was, inter alia, that "[t]he facilities from which the wire communications were intercepted are public and the application for [the] order . . . makes no application of special need sufficient to support the [order] . . . ." The court, *Hale, J.*, denied this motion. The second and third motions claimed, respectively, (1) that the order was facially invalid because the issuing panel failed to state the grounds for its determinations of probable cause

as required by General Statues § 54-41e, and (2) that the order was invalid because the state's attorney was not an authorized person to apply for it, pursuant to applicable federal law. The court, *Byrne, J.,* denied these motions[2] and the evidence was admitted in the trial. This appeal followed.

I

## THE DEFENDANT'S MOTIONS TO SUPPRESS

A

### THE PANEL'S FAILURE TO DETERMINE WHETHER THE FACILITY WAS PUBLIC AND, IF SO, WHETHER A SPECIAL NEED EXISTED

The defendant's first claim of error involves General Statutes § 54-41d (7), which authorizes the panel to issue a wiretap order "if the panel determines on the basis of the facts submitted by the applicant that there is probable cause to believe that: . . . (7) if the facilities from which a wire communication is to be intercepted are public, a special need exists to intercept wire communications over such facilities . . . . " The defendant argues that this language requires a specific finding by the panel of probable cause as to whether the facility[3]

---

[2] The reproduced trial court record supplied to us in this appeal does not indicate on its face any action by the court on the third motion to suppress, nor does the defendant in his brief supply a transcript reference to any oral decision by the trial court. See Practice Book § 3060F (c). The state does not deny in its brief, however, that the court addressed the motion and denied it. We therefore treat the motion as denied, and as briefed by the parties in this court.

[3] At oral argument in this court, the defendant, for the first time, suggested that the word, "facilities," as used in General Statutes § 54-41d, refers, not to the telephonic or other apparatus of wire communications sought to be tapped, but to the physical place in which the apparatus is located. Thus, he would have us focus our inquiry on whether the lounge, rather than its telephone, was public. This argument is disingenuous at best. Examination of chapter 959 of the General Statutes, entitled "Wiretapping and Electronic Surveillance," of which General Statutes § 54-42d is a part, makes it absolutely clear that the words, "facilities" and "facility,"

is public and, if so, a specific finding of probable cause that a special need exists. The defendant further argues that the evidence produced at the hearing on his motion to suppress indicates that the facility tapped was a public telephone, that a reasonable prior investigation by the applicant would have revealed that the telephone had sufficient indicia of publicity to warrant submission of the question of its character to the panel for determination, and that finding number seven of the panel's order was insufficient to meet the mandate of the statute. We reject the defendant's arguments.

First, the statute does not, as the defendant argues, require that the issuing panel make a specific finding as to whether the facility is public and, if so, whether a special need exists. General Statutes § 54-41d (7) requires, for wiretap authorization, that "the panel [determines] on the basis of the facts submitted by the applicant that there is probable cause to believe that: . . . (7) *if* the facilities from which a wire communication is to be intercepted are public, a special need exists to intercept wire communications over such facilities . . . ." (Emphasis added.) Thus, it is the publicity of the facility, as determined by the facts submitted by the applicant, which triggers the required determination by the panel that a special need exists for interception.

There was nothing in the application or affidavit in this case to suggest to the panel that the telephone in

mean the electronic apparatus and not the real estate. See, e.g., General Statutes § 54-41a (1) (" 'Wire Communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of telephone or telegraph"); General Statutes § 54-41a (3) (" 'Electronic, mechanical or other device' means any device or apparatus which can be used to intercept a wire communication other than (A) any telephone or telegraph instrument, equipment or facility, or any component thereof (i) furnished to the subscriber or used by a communications common carrier in the ordinary conduct of its business"). Furthermore, the defendant in his brief clearly and repeatedly uses the term "facility" in its proper statutory sense.

the lounge was a public telephone. We simply do not find in the statute the investigative and two-step finding process which the defendant urges. The language of the panel, which tracked the language of the statute and added the caveat, "if applicable," was quite proper. In *State* v. *Levine*, 5 Conn. App. 207, 209, 497 A.2d 774, cert. denied, 197 Conn. 816, 500 A.2d 1337 (1985), we held that a panel's finding, which was in the alternative and tracked the statutory language, was proper. A panel's finding which is in the subjunctive and tracks the statutory language is equally proper.

Second, the evidence adduced by the defendant at the hearing on this motion to suppress could not, even if taken as true, establish that any of the extensions of the tapped telephone facility in the lounge was a "public" facility as that term is used in General Statutes § 54-41d. That evidence is as follows: The lounge was a bar open to the public. There were three telephones in the lounge, all of which were extensions of number 666-4653.[4] One of the telephones was in the kitchen, one was located behind the bar and one was located at the bar. The telephone in the kitchen was available for use upon request by regular patrons for private conversations. The telephone located behind the bar was used for business and was not generally available for use by patrons of the bar. The telephone at the bar was generally available for use by patrons, usually, but not always, upon request to the bartender. This telephone had a sign on it which stated, "Local calls only. Three minute limit." On occasion a person would enter the bar and use this telephone without purchasing a drink.

The word, "public," must be interpreted according to its use in context. 73 C.J.S. 330, Public. One of

[4] There was also a pay telephone in the lobby of the lounge which is not involved in this case.

its usual meanings as an adjective is, "operated for the benefit of the public, rather than for the benefit of a private individual, and it means the public generally has the free and unrestricted right to use it." (Footnotes omitted.) Id., 331. "Public" means "accessible to or shared by all members of the community." Webster's Third International Dictionary. It is clear that this is the sense which the legislature intended by its reference in General Statutes § 54-41d to "public" telephone facilities.

One does not ordinarily consider a telephone leased to a private commercial establishment, even an establishment which is open to the public as in this case, and made available principally to the establishment's patrons, as a public telephone. Statutory words and phrases, which are neither technical nor words and phrases of art, are construed "according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). This reading is buttressed by the scant legislative history relating to General Statutes § 54-41d (7), which suggests that the legislature used the phrase in its conventional, commonly understood sense. See 14 S. Proc., Pt. 2, 1971 Sess., p. 903 (Remarks of Senator Romeo G. Petroni, envisioning a public telephone facility as one located in a railroad station and used by thousands of people.)

In this case, none of the telephone extensions in the lounge was a "public" telephone facility. Although they were available to various patrons of the lounge within certain limitations set by the owner of the lounge, and although on occasion nonpatrons would use one of them within the same limitations, there was no showing here that the public had a free and unfettered right to use them, and that they were accessible to or shared by all members of the public.

## B

THE DEFENDANT'S CLAIM OF FACIAL INVALIDITY OF
THE ORDER

The defendant claims that the wiretap order was facially invalid. This claim has two facets: (1) the order of the panel contains findings in the alternative, some of which are inconsistent with each other; and (2) the order does not comply with the requirement of General Statutes § 54-41e that the order "be accompanied by a written statement of the issuing panel setting forth in detail its determination made in accordance with the provisions of section 54-41d and the grounds therefor . . . ." We disagree.

The first facet of the defendant's argument is disposed of by *State* v. *Levine,* supra. Specific written findings of the panel in the alternate are findings nonetheless; id.; and the fact that they tracked the statutory language and that some of them may appear inconsistent does not vitiate their validity as findings, as long as they meet the statutory requirements of General Statutes §§ 54-41d and 54-41e.

The second facet of the defendant's argument is more troublesome, but has also been rejected by us. In *State* v. *Mastrianni,* 5 Conn. App. 634, 501 A.2d 772 (1985) (per curiam), we rejected a similar challenge to a wiretap order. We address the defendant's claim here in less summary fashion, however, because of the recurring nature of the claim.

The wiretap order began by noting that the panel "by unanimous vote . . . orders the interception of the wire communications of [the defendant] and other unknown persons" transmitted over the lounge's telephone facility. The order then stated, inter alia, as follows: "The panel, pursuant to Section 54-41d, of the

General Statutes, has unanimously determined on the basis of the facts submitted by the applicant in [Drescher's affidavit] that there is probable cause to believe" that the nine determinations of probable cause required by General Statutes § 54-41d existed. The order also contained all the specifications required by General Statutes § 54-41e (1) through (11), and specifically addressed the contents of a wiretap order required by the remainder of General Statutes § 54-41e, such as the time of its execution, the minimization requirement, and technical assistance by the telephone company. Reading the order together with the application and its supporting affidavit, to which the order specifically referred, renders the factual and legal bases of the order quite clear. We conclude that such a reading satisfied in this case the requirement of General Statutes § 54-41e that the wiretap order "be accompanied by a written statement of the issuing panel setting forth in detail its determination made in accordance with the provisions of section 54-41d and the grounds therefor . . . ."

There can be no quarrel with the fact that the wiretap order was accompanied by a written statement of the panel which set forth in detail its determinations of probable cause as required by General Statutes § 54-41d. The order particularly addressed each of the nine probable cause determinations required by that section. The defendant's argument must therefore focus on the language of General Statutes § 54-41e that the panel's written statement set forth "in detail . . . the grounds therefor . . . ."

"A statute, even [our wiretap statute] which has been held to be subject to strict construction; *State* v. *Formica,* [3 Conn. App. 477, 481, 489 A.2d 1060, cert. denied, 196 Conn. 806, 494 A.2d 903 (1985)]; must be read with common sense, so as to accomplish a reasonable result and not to thwart its purpose." *State* v.

*Ralston,* 7 Conn. App. 660, 682, 510 A.2d 1346 (1986). The purpose of the statutory requirement that the panel set forth in detail its grounds for the issuance of the order is two-fold: (1) to ensure that the panel will give its full attention to the issue of whether an order should issue; and (2) to permit a reasonable review by the trial court or an appellate court of the propriety of the order. The first purpose is fulfilled by the signed statement of the panel that it "has unanimously determined on the basis of the facts submitted by the applicant in [Drescher's affidavit] that there is probable cause to believe that" the nine requirements of General Statutes § 54-41d were met. The second purpose is fulfilled by the fact that a reviewing court has before it both the detailed order of the panel and the application together with the supporting affidavit. Just as an ordinary search warrant must not be read in a vacuum but must be evaluated together with its accompanying application and affidavit; see *State* v. *Santiago,* 8 Conn. App. 290, 304–305, 513 A.2d 710 (1986); so must a wiretap order be evaluated together with its accompanying application and affidavit. See *United States* v. *Tortorello,* 480 F.2d 764, 781 (2d Cir.), cert. denied, 414 U.S. 866, 94 S. Ct. 63, 38 L. Ed. 2d 86 (1973); *Moore* v. *United States,* 461 F.2d 1236, 1238 (D.C. Cir. 1972).

This reading of General Statutes § 54-41e regarding the contents of the order is buttressed by reference to its legislative history. That history makes it clear that the legislature, in enacting the wiretap statute, intended the procedure of issuance of a wiretap order to be analagous to that of issuance of a search warrant, enhanced, however, by the additional safeguards inherent in the requirement that the order issue only upon the unanimous determination of three judges, unlike a search warrant which is authorized by a single judge.[5]

---

[5] Senator Jay W. Jackson stated: "In effect, we have a search warrant procedure which will be done by the three judges. I think that the three judge panel will give the protection which is needed. You will have reason-

The issuance of a search warrant by a judge requires only that, after making a common sense determination based on the application and affidavit presented to him, probable cause exists; *State* v. *Telesca,* 199 Conn. 591, 603, 508 A.2d 1367 (1986); the judge sign the search warrant. It is not required of the issuing judge that he also produce a memorandum of decision or other written statement explaining further the basis of that common sense judgment. We do not believe that General Statutes § 54-41a requires more from the three-judge wiretap panel.

The defendant's argument would require a panel to do more than to state its unanimous determination that probable cause exists based on the material presented to it, to state in detail its findings of probable cause as to the nine factors specified in General Statutes § 54-41d, and to state its determination as to the additional matters covered by General Statutes § 54-41e. The defendant would in effect require the panel to draft and agree unanimously on a memorandum of decision somehow spelling out its reasons as to all nine factors specified in General Statutes § 54-41d. This reading of General Statutes § 54-41e misperceives the nature of a memorandum of decision regarding a probable cause determination, would not comport with common sense, would lead to an unreasonable result and would thwart the purpose of the wiretap statutory scheme. *State* v. *Ralston,* supra.

When a reviewing court, such as a trial court acting on a motion to suppress or an appellate court review-

ing on the part of the three judges and you will not have a precipitous claim made by a law enforcement official to an individual judge who may perhaps, not be able to give adequate consideration to the application. . . . I would also point out that the three judge panel, must be unanimous before any wiretap can be instituted." 14 S. Proc., Pt. 2, 1971 Sess., p. 870.

Representative Albert W. Cretella, Jr., stated: "I point out that in effect a wiretap as it is being used in this bill, has the same effect as a search warrant." 14 H. Proc., Pt. 2, 1971 Sess., p. 845.

ing a trial court's decision on such a motion, issues a written decision in response to a defendant's challenge to the validity of a wiretap order, it ordinarily does so in response to specific claims of defect. Thus, the issues addressed by the court are necessarily confined by the nature of the claims of defect. The defendant's argument would require the panel to construct a written memorandum of decision in the absence of any such claims of defect and, presumably, to anticipate them before they are even made. We cannot attribute to the legislature the intent to create such an unprecedented and bizarre judicial procedure. See *Connecticut Natural Gas Corporation* v. *DPUC*, 1 Conn. App. 1, 4, 467 A.2d 679 (1983).

Furthermore, such a requirement would undoubtedly require time, a commodity which is ordinarily in short supply when the need for a wiretap is demonstrated. Several of the probable cause determinations required by General Statutes § 54-41d involve findings which focus on timeliness. Subsection (1) of General Statutes § 54-41d requires a finding that an "individual . . . is committing an offense enumerated in section 54-41b"; subsection (2) requires a finding that "particular communications will constitute material evidence that [such] an offense . . . is being committed"; and subsection (5) requires a finding that the tapped facilities or their location "are being used, or are about to be used, in connection with the commission of such an offense . . . ." It takes little imagination or understanding of the process of gaining considered unanimity among three judges to the contents and wording of a decision, to realize that, while that process is taking place, the bases of those findings could evaporate. Thus, the defendant's argument would thwart a principal purpose of the wiretap scheme, namely, to permit the apprehension, under appropriate safeguards, of persons who have committed or are committing the

crimes specified in General Statutes § 54-41b. Indeed, the defendant's proposed reading of General Statutes § 54-41d would in all likelihood produce wiretap orders issued upon bases that no longer exist, and thus would run counter to the "legislative concern that wiretap orders not issue based on stale information." *State* v. *Ralston,* supra, 683.

## C

### THE DEFENDANT'S CLAIM THAT THE STATE'S ATTORNEY WAS UNAUTHORIZED TO APPLY

The defendant's third attack on the validity of the wiretap order is that the state's attorney for the judicial district of Hartford-New Britain was not an authorized applicant for a wiretap order because he was not a "principal prosecuting attorney of any political subdivision" of the state within the meaning of 18 U.S.C. § 2516 (2). This argument is without merit.

The basic authority of the states to conduct wiretapping derives from chapter 119 of the United States Code, entitled "Wire Interception and Interception of Oral Communications." The interception and use of wire communications is deemed to be illegal unless specifically authorized by that chapter. 18 U.S.C. § 2511. Section 2516 (2) of title 18 of the United States Code permits "[t]he principal prosecuting attorney of any State, *or the principal prosecuting attorney of any political subdivision thereof,* if such attorney is authorized by a statute of that State," to apply for a wiretap order. (Emphasis added.) Pursuant to General Statutes § 54-41b either "[t]he chief state's attorney or the state's attorney for the judicial district in which the interception is to be conducted may make application" to the judicial wiretap panel.

The defendant argues that since county government was abolished in Connecticut effective October 1, 1960,

the state's attorney for the Hartford-New Britain judicial district is an official of the judicial district and not of a county, and that a judicial district is merely a geographical division without powers of legislation, taxation, appropriation or self-government. Therefore, he claims, a judicial district is not a "political subdivision" within the meaning of 18 U.S.C. § 2516 (2). We disagree.

It is clear from the legislative history of 18 U.S.C. § 2516 (2) that the term, "political subdivision," was not used in any literal sense but was meant to focus on the function of law enforcement. "The important question, however, is not name but function. The intent of the proposed provision is to provide for the centralization of policy relating to statewide law enforcement in the area of the use of electronic surveillance in the chief prosecuting officer of the State. Who that officer would be would be a question of State law. Where no such office exists, policymaking would not be possible on a statewide basis; it would have to move down to the next level of government. In most States, the principal prosecuting attorney at the next political level of a State, usually the county, would be the district attorney, State's attorney or county solicitor. The intent of the proposed provision is to centralize areawide law enforcement policy in him. Who he is would also be a question of State law. Where there are both an attorney general and a district attorney, either could authorize applications, the attorney general anywhere in the State and the district attorney anywhere in his county. . . . State legislation enacted in conformity with this chapter should specifically designate the principal prosecuting attorneys empowered to authorize interceptions." Senate Report, No. 1097, U.S. Code Congressional and Administrative News, 90th Congress, 2d Sess. (1968) 2112, 2187.

This reading of the federal use of the term is fully consistent with Connecticut law. That law makes clear that "political subdivision" is a comprehensive term which refers to any division of the state made for the purpose of carrying out public governmental functions. *State ex rel. Maisano* v. *Mitchell,* 155 Conn. 256, 263, 231 A.2d 539 (1967). Certainly, the function of law enforcement, which our statutes have lodged in the offices of both the chief state's attorney and the various state's attorneys for the judicial districts, is such a function.

Indeed, in 1971, when our wiretap statute was first enacted, only the state's attorneys were authorized to make applications.[6] See General Statutes (Rev. to 1972) § 54-41b. The office of chief state's attorney was not created until 1973. Public Acts 1973, No. 73-122, § 27. Thus, the defendant's argument would have rendered our wiretap statute a two-year nullity. We cannot ascribe the intention to create such a bizarre result to either the United States Congress or to the Connecticut legislature.

## II

### The Defendant's Evidentiary Claims

The defendant makes three evidentiary claims of error. We find no merit to any of them.

### A

The defendant claims that the court erred by admitting into evidence a copy of the order by the judicial panel to the telephone company requiring the company

---

[6] It is of no moment, moreover, that the initial version of the wiretap statute referred to the applicant as "[t]he state's attorney for the *county* in which the interception is to be conducted"; (emphasis added), General Statutes (Rev. to 1972) § 54-41b; because the counties have been no more than geographical subdivisions of the state without governmental functions since 1960.

to provide technical assistance to the state in placing the wiretap. The defendant's objection was that the exhibit was hearsay, that the statutory business entry exception to the hearsay rule was not complied with, and that the ⟨ ⟩hibit was irrelevant. The court overruled the defendant's objection and the defendant duly excepted.

On appeal, the state concedes that it did not establish at trial all the necessary prerequisites of the business entry statute. We agree with the state, however, that the exhibit was properly admitted on other grounds.

The business entry statute; General Statutes § 52-180; creates an exception to the hearsay rule. See *Schwarz* v. *Waterbury Public Market, Inc.*, 6 Conn. App. 429, 435, 505 A.2d 1272 (1986). Hearsay is an out of court statement offered to establish the truth of the facts contained in the statement. *Vazzano* v. *Slater*, 6 Conn. App. 1, 6, 502 A.2d 440 (1986). This exhibit was not hearsay, because it was not offered for the truth of any facts contained in it; it was offered as a judicial directive to the telephone company to render technical assistance.

The sole question on appeal, therefore, is whether the exhibit was relevant and, if so, whether its relevance outweighed the claimed prejudicial effect. Prior to the admission of the exhibit, a telephone company representive had testified to the actions of the telephone company in rendering assistance to the police in intercepting telephone calls. Such conduct would be criminal if not specifically authorized. 18 U.S.C. § 2511; General Statutes § 53a-189. The order was clearly relevant in order to establish that the telephone company was acting within the law. The defendant has not established the kind of prejudice necessary to persuade us that the trial court abused its broad discretion in admitting the exhibit.

## B

The defendant's second evidentiary claim is a three-pronged challenge to the admission of the tape recordings of his intercepted telephone conversations. We reject this claim.

The defendant first argues that the tapes were admitted without sufficient authentication that they were fair and accurate reproductions of the intercepted conversations. Despite the unsupported assertion in his brief that he made this claim at the trial, he has not pointed to any transcript reference where he did so. Nor has he replied to the state's argument in its brief and at oral argument that he made no such objection at the trial. Under these circumstances, therefore, we decline to review this prong of the defendant's claim. *Osborne* v. *Osborne,* 2 Conn. App. 635, 641, 482 A.2d 77 (1984).

In this regard, the defendant also argues that the state did not sufficiently establish the chain of custody of the tapes so as to preclude the likelihood of tampering. It is not necessary to review this claim at any length. Suffice it to say that the trial court had ample evidence to support a finding of a reasonable probability that the tapes were not changed in significant respects. *State* v. *Heinz,* 1 Conn. App. 540, 544–45, 473 A.2d 1242, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984).

The defendant next argues that the tapes were not sealed in the time and manner required by General Statutes § 54-41i. That statute provides in pertinent part as follows: "The recording of the contents of any wire communication in accordance with the provisions of this section [requiring that intercepted communications be recorded, if possible] shall be done in such manner as will protect the recording from editing or other alterations. Immediately upon the expiration of the period

of the order, or extensions thereof, such recordings shall be made available to the panel issuing such order and sealed under its directions and custody of such recordings shall be wherever the panel so directs."

The hearing held by the trial court on this issue disclosed the following: Drescher monitored the wiretaps, which took place on October 20, 21 and 22, 1979, and made separate daily recordings of the intercepted conversations. He sealed each tape in a box with a fiber sealing tape, and sealed each box in a manila envelope with the same fiber tape. He kept the tapes of the October 20 and 21 conversations in his possession until October 22, when he delivered them to the criminal intelligence unit of the state police. He kept the tape of the October 22 conversations in his possession until October 23, when he delivered it to the criminal intelligence unit. On November 7, 1979, the criminal intelligence unit made copies of the tapes and delivered the originals on November 9, 1979, to Carl Testo, who was then the secretary to the judicial wiretap panel.

The evidence further established that the reason for the delay between October 23, 1979, and November 9, 1979, was as follows: Detective Thomas Brady of the criminal intelligence unit received the tapes from Drescher and kept them in a special vault until they were copied. At that time, Brady had a new partner who was attending school in Florida and Brady's unit was also busy working on three other wiretaps. Therefore, the tape in question could not immediately be copied and delivered to Testo.

When the tapes were delivered to Testo they were in envelopes which were sealed with a fiber tape. Testo did not open the envelopes. He signed his name, as secretary of the panel, along the edge of the sealing tape on each envelope, wrote the date on the envelope, and placed the envelopes in a vault designated for the

use of the panel. He did all this pursuant to established procedures for handling wiretap material. He knew of no formal vote or written regulation of the panel establishing this procedure. In 1983, Testo was replaced as secretary to the wiretap panel by Daniel Horwitch, who was the secretary at the time of the trial of this case in 1984. During the time from November 9, 1979, through the time of trial only Testo and Horwitch, as secretaries to the panel, had access to the vault which contained the tapes.

The defendant claims (1) that the sealing of the tapes was not in accordance with the statute, (2) that they were sealed too late, and (3) that they were delivered to an unauthorized person. We disagree.

We agree with the defendant that the statute requires that the tapes be sealed upon receipt by the panel's custodian. We do not agree, however, that the provision of the statute, namely, that the tapes be "sealed under [the panel's] directions," mandates that those directions be in any particular form. Those directions may be evidenced, as they were here, by an established procedure which bears more than ample indicia of safety and reliability. Testo received them in a safely sealed condition, adopted that sealing as his own by signing his name and the date along the edge of the sealing tape, and kept them in a designated, restricted and secure vault. Horwitch continued that process when he assumed his duties as secretary to the panel. This procedure comported with the sealing requirements of the statute.

With respect to the defendant's claim of delay in transmission of the tapes from the police to Testo, the defendant concedes that the word, "immediately," means without unreasonable delay, considering the nature of the task to be performed. *Bailey* v. *Bruneau's Truck Service, Inc.*, 149 Conn. 46, 52, 175 A.2d 372

(1961); *Krattenstein* v. *Thomas,* 7 Conn. App. 604, 609, 509 A.2d 1079 (1986). The federal wiretap statute contains language essentially identical to our statute. "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C. § 2518 (8) (a). That statute has been interpreted to mean that any delay beyond one or two days calls for a satisfactory explanation. *United States* v. *Vasquez,* 605 F.2d 1269, 1278 (2d Cir.), cert. denied, 444 U.S. 981, 100 S. Ct. 484, 62 L. Ed. 2d 408 (1979); *United States* v. *Fury,* 554 F.2d 522, 533 (2d Cir. 1977), cert. denied, 436 U.S. 931, 98 S. Ct. 2831, 56 L. Ed. 2d 776 (1978) (where there is reasonable basis for delay, failure to seal "immediately" does not require suppression of evidence). We agree with the trial court's findings in this case that the delay of sixteen days between October 23, 1979, and November 9, 1979, was reasonable, and we agree that the explanation was satisfactory. See *United States* v. *Vasquez,* supra (delay of seven to thirteen days held reasonable upon satisfactory explanation).

The defendant's final challenge to the admission of the tapes is that Testo was not an authorized custodian of the tapes because there was no written directive or authorization to him to perform that function. This argument is without merit. The statute does not mandate that the authorization be in any particular form. The trial court found, on the basis of Testo's testimony, that he had the requisite authority. Public officials are presumed, in the absence of evidence to the contrary, to have performed their functions lawfully. *Patry* v. *Board of Trustees,* 190 Conn. 460, 477, 461 A.2d 443 (1983). The trial court's finding was not clearly erroneous.

## C

The defendant's final evidentiary claim is that the trial court erred in restricting his cross-examination of Drescher. This claim requires little discussion.

Drescher was able to identify the defendant's voice on each tape because he had heard the defendant speak in the lounge several times, albeit not over the telephone. On cross-examination the defendant sought to challenge the credibility of Drescher's identification of the defendant's voice by asking Drescher to identify other voices on the tapes. The court sustained the state's objection, and the defendant excepted.

There was no showing that Drescher had heard any of the other voices, which the defendant sought to have him identify, before hearing them on the tapes. Thus, it would have been a fruitless venture to ask him to identify them, and would have offered the jury nothing as a basis on which to test the credibility of his identification of the defendant's voice on the tapes. Under these circumstances, the court's ruling neither deprived the defendant of his constitutional right of cross-examination nor was it an abuse of the court's discretion in limiting that cross-examination.

There is no error.

In this opinion the other judges concurred.