STATE OF CONNECTICUT *v.* ELLIOT G. VALLAS
(5696)
(5697)

STATE OF CONNECTICUT *v.* WILLIAM CALASH
(5726)

STATE OF CONNECTICUT *v.* ROBERT IAQUESSA
(5727)
(5728)

STATE OF CONNECTICUT *v.* WILLIAM GIROLOMONI
(5732)

STATE OF CONNECTICUT *v.* FRANK ROGERS
(5750)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued May 2—decision released September 20, 1988

*William F. Dow III,* with whom, on the brief, was *Carole C. Cooke,* for the appellant in the first two appeals (defendant Elliot Vallas).

*Gary A. Mastronardi,* for the appellant in the third appeal (defendant William Calash).

*Daniel A. Lyons, Jr.,* with whom, on the brief, was *Lisa A. Riggione,* law clerk, for the appellant in the fourth and fifth appeals (defendant Robert Iaquessa).

*Michael J. McClary,* with whom, on the brief were *Hugh F. Keefe, John J. Keefe, Jr.,* and *Charles Tiernan,* for the appellant in the sixth appeal (defendant William Girolomoni).

*Robert M. Casale,* with whom, on the brief, was *Tara L. Knight,* for the appellant in the seventh appeal (defendant Frank Rogers).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief were *Robert Devlin,* former assistant state's attorney, and *Janine D'Angelo,* law student intern, for the appellee (state).

SPALLONE, J. The defendants have filed a total of seven appeals which were argued together. This opinion addresses all of the issues raised in those appeals.

The defendants, William Calash, William Girolomoni, Robert Iaquessa, Frank Rogers and Elliot Vallas appeal their convictions, following their conditional pleas of nolo contendere,[1] to the crime of conspiracy to violate the state narcotic drug act in violation of General Statutes §§ 21a-277 (a) and 53a-48 (a). The defendants Iaquessa, Vallas and Rogers also appeal their convictions, following their conditional pleas of nolo contendere, to the crime of possession of a narcotic substance in violation of General Statutes § 21a-279 (a). Each plea of nolo contendere was conditioned on our review of the trial court's denial of the defendants' motions to suppress evidence that the defendants claimed was the product of an unreasonable search and seizure.

On January 28, 1986, the state's attorney for the judicial district of New Haven applied to the state wiretap panel, pursuant to Chapter 959a of the General Statutes; General Statutes §§ 54-41a through 54-41t; for

---

[1] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

authorization to intercept calls to and from telephone facilities registered to the defendant Calash. The supporting affidavit, signed by state police detectives George Nobile and William F. Schaeffer, Jr., alleged that Calash was involved in a network that sold and distributed cocaine. The wiretap order was requested as an aid in discovering the source of the cocaine and the configuration of the distribution network. On January 31, 1986, the wiretap panel granted the application to tap two telephones in the Calash home and issued wiretap order 86-01, which was limited to run from January 31, 1986, to February 14, 1986. In compliance with the order, the Calash phones were tapped from January 31, 1986, until February 11, 1986, when the interceptions were terminated due to information received by the state police that Calash had moved to Florida.

Information gleaned from police surveillance, informants and wiretap order 86-01 led the state police to seek two additional wiretap orders. On February 26, 1986, the state wiretap panel approved the two applications, and wiretap orders 86-03 and 86-04 were issued. Order 86-03 authorized the interception of telephone transmissions received at the home of the defendant Girolomoni. Order 86-04 authorized the tapping of two telephones at a Branford business known as the Rendezvous Cafe, one a private business phone, the other a public pay phone. Both orders were limited to the period of time from February 12, 1986, to March 12, 1986.

As a result of the investigation conducted, which included information accumulated from police surveillance, informants and the successful wiretaps, the defendants were arrested and charged with various offenses arising out of their alleged narcotics dealings. Pursuant to a warrant, the residences of three defendants, Vallas, Iaquessa and Rogers, were searched and

various items were seized, including the narcotics that provided the basis of the charges of possession levied against those defendants. They filed motions to suppress those items seized during the searches of their residences, and all five defendants moved to suppress evidence obtained via the wiretap orders. The motions to suppress the evidence obtained pursuant to the search warrants were denied. Similarly, after an extensive evidentiary hearing, the motions to suppress evidence obtained as a result of wiretap orders 86-01, 86-03 and 86-04 were denied, with the exception of one transmission, concerning the defendant Vallas, which was intercepted during wiretap order 86-01.[2]

All five defendants subsequently withdrew their earlier pleas of not guilty and entered conditional pleas of nolo contendere, reserving their rights to appeal from the denial of their motions to suppress.

The defendants, individually in some instances, and collectively in others, raise the following claims of error: (1) the trial court erred in denying the motions to suppress wiretap evidence (a) because the wiretap order did not authorize twenty-four hour surveillance, (b) because the affidavit for order 86-04 did not support the finding of a "special need" which was required to lawfully tap the public pay phone at the Rendezvous Cafe, and (c) because there was an undue delay between the completion of the taping authorized by orders 86-03 and 86-04 and the delivery of the tapes to the wiretap panel which was in violation of General Statutes § 54-41i; (2) the trial court erred as to the defendant Vallas when it denied his motion to suppress the interceptions garnered under wiretap order 86-04 as the illegal fruit of the suppressed conversation intercepted under 86-01; and (3) the trial court erred in denying

---

[2] The details of the suppression of this conversation are discussed in greater detail in part II, infra.

the claims of the defendants Iaquessa, Rogers and Vallas that there was insufficient information in the affidavit to support a finding that probable cause existed to search their residences.

I

A

As part of their first claim of error, all of the defendants urge upon us the proposition that the orders issued by the wiretap panel limited the telephone monitoring to twelve hours per day. The three wiretap orders all expressly stated that the interceptions were authorized "during the hours of 12:00 a.m. to 12:00 p.m." The defendants claim that the language used restricted the monitoring activities to the hours between 12 noon and 12 midnight. The state contends that no such limitation was ordered, and that a common sense review of the orders, the application and the affidavits indicate that the police were authorized to maintain a twenty-four hour wiretap. We agree with the state's position.

During the lengthy hearing on the defendants' motions to suppress, the trial court determined that the wiretap panel's reference to the hours of "12:00 a.m. to 12:00 p.m." was ambiguous. As is proper when faced with an ambiguity; see State v. Santiago, 8 Conn. App. 290, 304–305, 513 A.2d 710 (1986); the trial court looked beyond the face of the order to the wiretap application and accompanying affidavits to determine the intent of the panel's order. In addition to these documents, the court considered testimony that the investigating officers were seeking authorization for twenty-four hour surveillance.[3] Schaeffer reiterated the statements contained in his affidavit accompanying the

---

[3] In fact, the affidavit prepared by the investigating officers specified the hours of "12 midnight to 12 midnight." The term was changed to "12 a.m. to 12 p.m." when the state's attorney's office prepared the wiretap application.

wiretap application to the effect that narcotics dealing is not confined to any specific hours in a day, and that only twenty-four hour monitoring would yield productive results. In addition, Schaeffer testified that the officers in charge of the investigation, on receipt of the panel's order, presumed their request for twenty-four hour surveillance had been granted. On the basis of the evidence adduced at the evidentiary hearing, the order and its appurtenant supporting documents, the court concluded that the intent of the wiretap panel was to authorize a twenty-four hour wiretap.[4]

The trial court was correct in its determination that the term "12:00 a.m. to 12:00 p.m." is inherently ambiguous.[5] See, e.g., *United States* v. *Rosario,* 820 F.2d 584, 585 (2d Cir. 1987); *Warshaw* v. *Atlanta,* 250 Ga. 535, 299 S.E.2d 552 (1983); *Hurwitz* v. *Boyle,* 117 N.J. Super. 196, 284 A.2d 190 (1971); 51 A.L.R.3d 1061. It therefore acted properly in looking to the order's supporting documents to determine the intent of the panel. "Just as an ordinary search warrant must

---

[4] The state introduced evidence at the hearing that the wiretap panel had issued twenty-four hour monitoring orders in previous years using the "12:00 a.m. to 12:00 p.m." designation. In 1986, nine twenty-four hour wiretap orders were issued: six used "12:00 a.m. to 12:00 p.m."; two used "12:00 midnight a.m. to 12:00 midnight p.m."; and one used "12:00 midnight to 12:00 midnight." There were no twenty-four hour wiretaps authorized in 1985. In 1984, out of eighteen twenty-four hour orders, eight used "midnight .m. to midnight .m."; four used "12: midnight a.m. to 12: midnight p.m."; five used "12:00 midnight a.m. to 12:00 midnight p.m."; and one used "12:00 Midnight .m. to 12:00 Midnight .m." The various creative denominations of these hours indicates not only confusion and ambiguity, but a great need for either a single, agreed upon term or, as the trial court suggested, a return to military time so as to avoid future misunderstandings.

[5] The word "noon" is defined as "the time of day when the sun is *on* the meridian." (Emphasis added.) Webster, Third New International Dictionary. The abbreviation "a.m." stands for "ante meridian," meaning that part of the day before the sun has reached the meridian, and the abbreviation "p.m." stands for "post meridian," meaning that part of the day after the sun has passed the meridian. Neither abbreviation, therefore, applies to the moment of noon.

not be read in a vacuum but must be evaluated together with its accompanying application and affidavit; see *State* v. *Santiago,* [supra, 304–305]; so must a wiretap order be evaluated together with its accompanying application and affidavit. See *United States* v. *Tortorello,* 480 F.2d 764, 781 (2d Cir.), cert. denied, 414 U.S. 866, 94 S. Ct. 63, 38 L. Ed. 2d 86 (1973); *Moore* v. *United States,* 461 F.2d 1236, 1238 (D.C. Cir. 1972)." *State* v. *Chiarizio,* 8 Conn. App. 673, 683, 514 A.2d 370, cert. denied, 201 Conn. 809, 515 A.2d 379 (1986). If the information contained in these appurtenant documents is sufficient to clarify the meaning and intent of the order, any factual ambiguity in the order is cured by reference to those documents. *State* v. *Santiago,* supra, 304.

Furthermore, having properly determined that the language of the panel's order was unclear, the trial court was required to conduct a common sense review of the evidence before it, including testimony, the order itself, any supporting documents and prior predilections of the panel, and to make a factual finding as to the panel's intent. See *State* v. *Ralston,* 7 Conn. App. 660, 678, 510 A.2d 1346 (1986). If such a finding is supported by credible evidence, it will not be disturbed by this court, unless it is clearly erroneous. Practice Book § 4061; *State* v. *Torres,* 197 Conn. 620, 625, 500 A.2d 1299 (1985).

## B

That portion of order 86-04 authorizing the interception of telephone transmissions at the public telephone located in the Rendezvous Cafe is challenged on two grounds: (1) all of the defendants claim that order 86-04 is facially invalid because it does not contain an express written finding of a "special need" to intercept telephone calls over a public phone; and (2) the defendants Girolomoni and Iaquessa claim that the order is not supported by adequate information from which the panel

could have concluded that a "special need" existed to tap the public phone. We find neither claim to be persuasive.

First, we do not agree with the defendants that, absent an express written finding of a "special need," a wiretap order for a public phone is invalid. General Statutes § 54-41d (7) provides that the issuing panel must find probable cause to believe that a special need exists to intercept wire communications over public facilities.[6] There is no statutory requirement contained, however, in that section or in § 54-41e, which delineates the necessary contents of the panel's order,[7] man-

---

[6] "[General Statutes] Sec. 54-41d. ISSUANCE OF ORDER. Upon such application the panel of judges, by unanimous vote, may enter an ex parte order authorizing the interception of wire communications within the state of Connecticut, if the panel determines on the basis of the facts submitted by the applicant that there is probable cause to believe that: (1) An individual has committed or is committing an offense enumerated in section 54-41b; (2) particular communications will constitute material evidence that an offense enumerated in section 54-41b has been committed or is being committed or will materially aid in the apprehension of the perpetrator of such offense; (3) such communications are not otherwise privileged; (4) other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ; (5) the facilities from which, or the place where, the wire communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such individual; (6) such facilities or places are not those described in section 54-41h; (7) if the facilities from which a wire communication is to be intercepted are public, a special need exists to intercept wire communications over such facilities; (8) the investigative officers to be authorized to intercept the wire communication are qualified by training and experience to execute the interception sought; (9) not more than thirty-four orders authorizing interception have been previously issued by all panels in the calendar year in which the application is made, except that upon a showing of an emergency situation in which the commission of an offense enumerated in section 54-41b may result in imminent peril to public health, safety or welfare, such panel may issue additional orders authorizing interception."

[7] "[General Statutes] Sec. 54-41e. STATEMENT BY PANEL ON ISSUANCE OF ORDER. CONTENTS OF ORDER. Each order authorizing the interception of any wire communication shall be accompanied by a written statement

dating a written finding of a special need. We conclude that the panel's having issued the order with an express acknowledgement that one of the telephones to be tapped was a public pay phone is sufficient to conclude that the panel had found probable cause to believe that the required special need existed.

of the issuing panel setting forth in detail its determination made in accordance with the provisions of section 54-41d and the grounds therefor and shall specify: (1) The identity of the person, if known, whose communications are to be intercepted; (2) the nature and location of the communication facilities as to which or the place where authority to intercept is granted; (3) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates; (4) the identity of the investigative officers authorized to intercept such wire communications; (5) the identity of the investigative or law enforcement officers to whom disclosure of the contents of any intercepted wire communication or any evidence derived therefrom may be made; (6) the use to which the contents of any intercepted wire communication or any evidence derived therefrom may be put; (7) the identity of the person making the application and his authority; (8) the identity of the issuing panel and its authority to issue an order; (9) the period of time during which such interception is authorized, including a statement that the interception shall automatically terminate when the desired communication has been first obtained; (10) express authorization to make secret entry onto private premises to install any device, provided no such secret entry shall be authorized if there exists a practicable alternative method of executing the order which will preserve the secrecy of its execution; (11) the date of issuance of the order and its effective date. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception in accordance with the provisions of this chapter, and shall terminate upon attainment of the authorized objective, or in any event within fifteen days next succeeding the date of issuance of such order. An order authorizing the interception of a wire communication shall, upon request of the applicant, direct that a communication common carrier, landlord, custodian or other person shall furnish the applicant forthwith all information, facilities and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such carrier, landlord, custodian or person is according the person whose communications are to be intercepted. Any communication common carrier, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant at the prevailing rates."

Clearly, the wiretap panel had an obligation under § 54-41d (7) to deny the application to tap a public telephone unless it could find the required probable cause of a special need to intercept public communications. We cannot presume that the panel acted illegally absent evidence to that effect. Quite the contrary, it is presumed that a public officer, acting in his official capacity, has performed dutifully. *State* v. *Crawford,* 202 Conn. 443, 451, 521 A.2d 1034 (1987); *State* v. *Lenihan,* 151 Conn. 552, 555, 200 A.2d 476 (1964). The issuance of order 86-04 carries with it the implicit conclusion that the statutory criteria has been met.

Second, our review of order 86-04 and its accompanying documents confirms the panel's finding that there was probable cause to believe that a special need existed to monitor the public telephone.

The affidavit submitted in support of the application for wiretap order 86-04 included the following factual representations. The affiants had reason to believe that the defendants were selling narcotics at the Rendezvous Cafe. The police developed this information from a variety of sources, including an informant who had purchased cocaine from Girolomoni at the cafe and another who had alerted the affiant that Calash had been selling cocaine from the cafe. The latter informant also stated to the officer that, after Calash moved to Florida, Girolomoni took charge of both the cafe and the drug business. Information obtained during wiretap 86-01 disclosed that one potential drug purchaser was informed that, after Calash left for Florida, she would still be able to purchase drugs at the Rendezvous Cafe. Calash was to remain active in the business and would return periodically to check on the operation. Between February 7 and February 9, 1986, five calls were made to the Calash residence from the public pay phone inside the Rendezvous Cafe. Surveillance by an undercover officer revealed that Girolomoni

received phone calls on the pay phone despite the fact that the cafe had a business phone on the premises behind the bar and in an office. Iaquessa was a doorman at the cafe. In addition, the affiants requested that they be permitted to intercept calls only during the time when one of the principals was physically present in the Rendezvous Cafe.

In its totality, this information indicates that the public phone located in the Rendezvous Cafe was being used by the suspects in much the same way as a private phone. Calls were being made from this phone to the home of one of the principals, another principal regularly received incoming calls on this line, and the available evidence indicated that these conversations were drug related. Where, as in a case such as this, the targets of an investigation have regular access to a public phone and use it to conduct their business, a finding of a "special need" will be upheld. See *State v. Tanchalk,* 177 N.J. Super. 551, 555, 427 A.2d 118 (1981). The trial court did not err in concluding that the wiretap panel's finding of probable cause was supported by sufficient information. See, e.g., *State* v. *Telesca,* 199 Conn. 591, 600–604, 508 A.2d 1367 (1986); *State* v. *Kimbro,* 197 Conn. 219, 236 n.17, 496 A.2d 498 (1985); *State* v. *Ross,* 194 Conn. 447, 459, 481 A.2d 730 (1984); *State* v. *Ralston,* 7 Conn. App. 660, 670–79, 510 A.2d 1346 (1986).

C

The claim that the tape recordings of the intercepted communications should have been suppressed because of the delay between the expiration of wiretap orders 86-03 and 86-04 and the delivery of the final tapes to the wiretap panel, merits little discussion.

General Statutes § 54-41i provides in relevant part: "Immediately upon the expiration of the period of the order . . . [the taped] recordings shall be made avail-

able to the panel issuing [the wiretap] order and sealed under its directions. . . . " As used in this statute, "the word 'immediately,' means without unreasonable delay, considering the nature of the task to be performed. *Bailey* v. *Bruneau's Truck Service, Inc.,* 149 Conn. 46, 52, 175 A.2d 372 (1961); *Krattenstein* v. *Thomas,* 7 Conn. App. 604, 609, 509 A.2d 1079 (1986)." *State* v. *Chiarizio,* supra, 692–93. In *Chiarizio,* we concluded that "any delay beyond one or two days calls for a satisfactory explanation." Id., 693.

In this case, taping ceased at midnight on March 12, 1986. The investigating officers delivered the tapes to the criminal intelligence division (CID) of the state police for processing on Thursday, March 13, 1986. The tapes were ultimately received by the wiretap panel on Tuesday, March 18. Evidence was presented to the trial court that this five day delay was the result of a combination of factors, including the intervening weekend, the absence of one of the two member CID wiretap unit, and a heavy workload. The court found these explanations satisfactory. We agree. See *State* v. *Chiarizio,* supra, 693 (sixteen day delay found reasonable upon satisfactory explanation); *United States* v. *Vasquez,* 605 F.2d 1269, 1278 (2d Cir.), cert. denied, 444 U.S. 981, 100 S. Ct. 484, 62 L. Ed. 2d 408 (1979) (seven to thirteen day delay explained satisfactorily).

II

The defendant Vallas claims that any evidence obtained as a result of wiretap order 86-04 or as a result of the search of his home should have been suppressed as to him as the fruits of an illegal wiretap.

The trial court suppressed one conversation, involving Vallas, which was intercepted during order 86-01, on the ground that Vallas was not properly notified of the interception as required by General Statutes

§ 54-41k.[8] Because this conversation was referred to in the affidavits accompanying the applications for wiretap order 86-04 and for the search and seizure warrant directed at Vallas, he claims that any evidence obtained or seized by the order and warrant should also have been suppressed by the trial court. The state contends that both wiretap order 86-04 and the search and seizure warrant were supported sufficiently by additional information, independent of the suppressed conversation. We agree.

Vallas first claims that, excluding the suppressed conversation, only one reference was made to him in the affidavit supporting order 86-04. According to Vallas, this one reference, which occurred during an intercepted conversation betwen Calash and Iaquessa, is an insufficient basis for a finding of probable cause. It is

[8] "[General Statutes] Sec. 54-41k. SERVICE OF NOTICE OF INTERCEPTION; INSPECTION OF INTERCEPTED COMMUNICATIONS, APPLICATIONS AND ORDERS; POSTPONEMENT OF SERVICE. Within a reasonable time but not later than ninety days next succeeding the termination of the period of an order or extensions thereof, the issuing or denying panel may cause to be served on the persons named in the order or the application, *and shall cause to be served on persons not named in the order or application whose communications were intercepted,* an inventory which shall include notice of the fact of the entry of the order or the application; the date of the entry and the period of authorized interception, or the denial of the application; and the fact that during the period wire communications were or were not intercepted. The panel shall make available to such person or his counsel for inspection the intercepted communications, applications and orders immediately upon the filing of a motion requesting such information. On an ex parte showing of good cause approved unanimously by the panel the serving of the inventory required by this section may be postponed for a period not to exceed sixty days. Not more than one such postponement shall be authorized and under no circumstances shall the serving of the inventory required by this section be made later than one hundred fifty days after the termination of the period of an order or extensions thereof."

Because Vallas was not named in the application for order 86-01, or in the order itself, notice to him of an intercepted conversation was mandatory. *State* v. *Formica,* 3 Conn. App. 477, 481, 489 A.2d 1060, cert. denied, 196 Conn. 806, 494 A.2d 903 (1985).

enough to say that this defendant misconstrues the nature of our wiretap statutes in relation to the need for a finding of probable cause.

"Neither the fourth amendment nor the federal statute require[s] a showing of probable cause *as to all persons named in the application as probable conversers, as long as probable cause is established as to one of them. United States* v. *Martin,* 599 F.2d 880, 884 (9th Cir. 1979); *United States* v. *Kirk,* 534 F.2d 1262 (8th Cir. 1976); *United States* v. *Tortorello,* [supra]; see Fishman, Wiretapping and Eavesdropping (1985 Sup.) § 50." (Emphasis added.) *State* v. *Ralston,* supra, 680.

Because Vallas has not challenged the trial court's finding that probable cause was established as to some of the principals named in order 86-04, he cannot succeed on his claim that that order was not supported by sufficient information.

The second claim, regarding the issuance of the search and seizure warrant, similarly fails. Our review of the affidavit supporting the application for this warrant reveals sufficient independent information to justify its issuance despite the inclusion of the suppressed conversation. See *State* v. *Arpin,* 188 Conn. 183, 190–96, 448 A.2d 1334 (1982). Most harmful to this defendant was the information contained in the affidavit regarding the investigating officers' direct observation of Vallas completing a drug transaction in the parking lot of the Rendezvous Cafe. Whereas the police were made aware of this impending drug sale through the interception of a conversation during order 86-04, which we have deemed a legal wiretap, this information is wholly independent of the suppressed conversation. The trial court did not err in finding probable cause to justify the issuance of the search and seizure warrant.

## III

The defendants Iaquessa, Rogers and Vallas claim that there was no probable cause to search their residences because there was no nexus between their alleged drug related activities and their homes. In short, those defendants claim that none of the information culled from the wiretaps or surveillance connects narcotics with their residences. They claim that the applications for the search of their homes are devoid of any factual foundation that would allow a judicial authority to conclude that these defendants stored drugs in their homes.

The defendants cite *State* v. *DeChamplain,* 179 Conn. 522, 427 A.2d 1388 (1980), as support for their contention that there must be factual information in the supporting documents from which the issuing magistrate may determine that probable cause exists to permit the search. That case, however, is inapposite. In *DeChamplain,* the trial court determined that because the affidavit in support of the warrant contained only a conclusory statement to the effect that the affiant had probable cause to believe that there was marihuana on the premises, rather than a recitation of facts supporting that conclusion, the warrant was illegal. Our Supreme Court, in affirming the trial court, held that " 'the grounds for a search must satisfy *objective* standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests.' (Emphasis added.) *Torres* v. *Puerto Rico,* 442 U.S. 465, 471, 99 S. Ct. 2425, 61 L. Ed. 2d 1 (1979)." *State* v. *DeChamplain,* supra, 533.

The nexus between the object to be seized and the premises to be searched needs not rest on personal observation, " 'but can be inferred from the type of crime, the nature of the items sought, the extent of an

opportunity for concealment and normal inferences as to where a criminal would hide [the evidence].' " *State v. Couture,* 194 Conn. 530, 537, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985), quoting *United States v. Charest,* 602 F.2d 1015, 1017 (1st Cir. 1979). In dealing with large scale drug conspiracies, it is reasonable to conclude that the participants will maintain certain records and supplies in their homes. See *State v. Brown,* 14 Conn. App. 605, 615, 543 A.2d 750 (1988); see also *United States v. Reyes,* 798 F.2d 380, 382 (10th Cir. 1986); *United States v. Stefanson,* 648 F.2d 1231, 1236 (9th Cir. 1981). And, ordinarily, a conspiracy to sell drugs, such as is manifest here, "involves a course of conduct which continues over a long period of time." *State v. Ralston,* supra, 682. "Indeed, it is usually considered to be a regenerating activity." *State v. Brown,* supra, 615. When a suspect has been carrying on an illegal activity for an extended period of time without detection, it is reasonable to conclude that evidence of his activity will be secreted in his home. *State v. Couture,* supra, 543–44.

Our analysis of the affidavit accompanying the search warrant in this case discloses the factual allegation that Calash was involved in a drug distribution network. It was established from intercepted phone calls, through orders 86-01, 86-03 and 86-04, that certain persons were actively involved in selling narcotics through the Calash network, including the defendants Iaquessa, Rogers and Vallas as trusted members of that network. Through informants, it was learned that Calash left drug supplies with trusted people "so he would not directly be involved in the actual transaction of cocaine." The affiants, Schaeffer and Nobile, represented, on the basis of their experience and training, that people involved in this type of drug distribution network utilize their homes to store supplies, cutting

agents and records of transactions. These statements conform to the standards set forth in *Reyes, Stephanson* and *Brown,* supra.

We distinguish *State* v. *DeChamplain,* supra, from this case in that, here, we do not have "a conclusory statement to the effect that the affiants had probable cause to believe that there was marihuana in [the] apartment." Id., 531. The affidavit in support of the search warrant issued in this case is compatible with the principle asserted in *State* v. *Couture,* supra, 543–45, that, where people jointly engage in repeated criminal activity and remain undetected certain logical inferences arise, one of which is that "it is a logical inference that a criminal who believes his identity is concealed would utilize his residence as a safe place."

*DeChamplain* broke no new ground. It simply reiterated well established law that the judicial authority, and not those who apply for a search warrant, must draw the conclusion and make the determination that probable cause exists to justify the issuance of the warrant. *State* v. *Williams,* 169 Conn. 322, 326, 363 A.2d 72 (1975); *State* v. *Rose,* 168 Conn. 623, 627–28, 362 A.2d 813 (1975); *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315 (1967). " 'The issuing authority must determine for himself [or herself] the persuasiveness of the facts relied on to show probable cause. *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 [(1963)].' *State* v. *Allen,* [155 Conn. 385, 391, 232 A.2d 315 (1967)]. The issuing judge must not serve merely as a rubber stamp for the police. *State* v. *Rose,* [168 Conn. 623, 627–28, 362 A.2d 813 (1975)]." *State* v. *DeChamplain,* supra, 528.

Our review of the affidavit submitted in support of the search warrant for the residences of the defendants Iaquessa, Rogers and Vallas clearly indicates that the trial court acted well within the parameters of the

principles enunciated herein when, on the basis of the information contained in said affidavit and the logical inferences derived therefrom, it found probable cause to issue said warrant. The information in the affidavits in this case contained, not the conclusion that probable cause existed to search the defendants' homes, as was found in the *DeChamplain* affidavit, but factual allegations from which the issuing authority could reasonably and logically determine the existence of probable cause. The trial court did not err in denying the defendants' motions to suppress the evidence seized from their homes.

In summary, the trial court's denial of the motions to suppress wiretap evidence and the evidence seized from certain of the defendants' homes was proper and in conformity with applicable laws.

There is no error on any of the appeals.

In this opinion the other judges concurred.