STATE OF CONNECTICUT *v.* WILLIAM CALASH
(13607)

STATE OF CONNECTICUT *v.* WILLIAM GIROLOMONI
(13608)

STATE OF CONNECTICUT *v.* FRANK ROGERS
(13609)

STATE OF CONNECTICUT *v.* ELLIOT G. VALLAS
(13610)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, HULL and SANTANIELLO, Js.

Argued June 6—decision released August 8, 1989

*William F. Dow III,* with whom were *Steven D. Ecker, Gary A. Mastronardi, Robert M. Casale, Michael J. McClary* and, on the brief, *Hugh F. Keefe,* for the appellants (defendants).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

GLASS, J. The state filed informations against the defendants William Calash, William Girolomoni, Frank Rogers and Elliot Vallas, charging them with the crime

of conspiracy to violate the state narcotic drug act. General Statutes §§ 21a-277 (a) and 53a-48 (a).[1] The state also charged Rogers and Vallas with the crime of possession of a narcotic substance. General Statutes § 21a-279 (a).[2] Prior to trial, the defendants moved to suppress evidence of tape recorded telephone conversations.[3] The trial court granted Vallas' motion in part, but denied all other motions.

---

[1] General Statutes (Rev. to 1985) § 21a-277 (a) provides: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned."

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] "[General Statutes] Sec. 21a-279. (Formerly Sec. 19-481). PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years, or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[3] The defendants moved to suppress evidence of communications obtained pursuant to wiretap orders 86-01, 86-03 and 86-04, and asserted several grounds for suppression. The trial court granted the defendant Vallas' motion to suppress evidence seized under order 86-01. It denied all the other motions. Order 86-04 is the only order at issue in the present case.

Thereafter, the defendants entered pleas of nolo contendere on all charges, conditional on their right to appeal from the trial court's denial of their motions to suppress.[4] Upon their appeal, the Appellate Court upheld the trial court's rulings. See *State* v. *Vallas,* 16 Conn. App. 245, 547 A.2d 903 (1988). We granted the defendants' petition for certification limited to the narrow question whether, under applicable provisions of the Wiretapping and Electronic Surveillance Act, General Statutes § 54-41d et seq., the wiretap panel's failure to make a written determination of probable cause that a "special need" existed to intercept wire communications over a public telephone requires the suppression of evidence of those communications. See *State* v. *Vallas,* 210 Conn. 803, 554 A.2d 744 (1989). We affirm the Appellate Court's judgment.[5]

The relevant facts are as follows. See *State* v. *Vallas,* supra, 16 Conn. App. 248–50, 256. On January 28, 1986, the state's attorney for the judicial district of New Haven applied to the state judicial wiretap panel for authorization to intercept the telephonic communications made by specified known and unknown persons

---

[4] "[General Statutes (Rev. to 1985)] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[5] A fifth defendant, Robert Iaquessa, had charges brought against him similar to the charges against Rogers and Vallas. He also entered conditional pleas of nolo contendere to the charges; see *State* v. *Vallas,* 16 Conn. App. 245, 547 A.2d 903 (1988); however, he has not sought certification to appeal from the decision of the Appellate Court.

to and from telephone facilities located at Calash's Branford residence. See General Statutes § 54-41b.[6] The supporting affidavit, submitted by state police detective William Schaeffer, Jr., and Branford police department detective George Nobile, alleged that Calash was involved in a cocaine trafficking network. The investigators sought the wiretap order to aid in discovering the source of the cocaine and the configuration of the distribution network. According to the affidavit, Schaeffer and Nobile had been unsuccessful in obtaining evidence by other means of surveillance or by the use of undercover police officers. On January 31, 1986, the judicial wiretap panel issued order 86-01, authorizing the interception of communications over two telephones in the Calash home from January 31 to February 14, 1986. The Calash phones were tapped from January 31 to February 11, 1986, when the interceptions were terminated because of information received by the state police that Calash had moved to Florida.

The intercepted conversations together with other information indicated that Calash and Girolomoni were business partners in the Rendezvous Cafe located in Branford, and that when Calash left for Florida, he authorized Girolomoni to handle the cocaine business along with running the cafe. Because of information gleaned from police surveillance, informants and wiretap order 86-01, the state police decided to seek additional wiretap orders. On February 20, 1986, the state's

---

[6] "[General Statutes] Sec. 54-41b. APPLICATION FOR ORDER AUTHORIZING INTERCEPTION. The chief state's attorney or the state's attorney for the judicial district in which the interception is to be conducted may make application to a panel of judges for an order authorizing the interception of any wire communication by investigative officers having responsibility for the investigation of offenses as to which the application is made when such interception may provide evidence of the commission of offenses involving gambling, bribery, violations of section 53-395, violations of section 21a-277 or felonious crimes of violence."

attorney, relying on additional affidavits submitted by Schaeffer and Nobile, made two applications to the judicial wiretap panel. On February 26, 1986, the judicial wiretap panel issued order 86-03, authorizing interception of communications to and from a telephone in Girolomoni's Branford home from February 26 to March 12, 1986.

On that same day, the panel also issued order 86-04, the order at issue in this appeal. Order 86-04 authorized interception of communications to and from two telephones, one private and one public, located at the Rendezvous Cafe, from February 26 to March 12, 1986. Order 86-04 expressly indicated that the panel had found probable cause to authorize the wiretap of both telephones with respect to eight of the nine probable cause requirements of General Statutes § 54-41d.[7]

---

[7] "[General Statutes] Sec. 54-41d. ISSUANCE OF ORDER. Upon such application the panel of judges, by unanimous vote, may enter an ex parte order authorizing the interception of wire communications within the state of Connecticut, if the panel determines on the basis of the facts submitted by the applicant that there is probable cause to believe that: (1) An individual has committed or is committing an offense enumerated in section 54-41b; (2) particular communications will constitute material evidence that an offense enumerated in section 54-41b has been committed or is being committed or will materially aid in the apprehension of the perpetrator of such offense; (3) such communications are not otherwise privileged; (4) other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ; (5) the facilities from which, or the place where, the wire communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such individual; (6) such facilities or places are not those described in section 54-41h; (7) if the facilities from which a wire communication is to be intercepted are public, a special need exists to intercept wire communications over such facilities; (8) the investigative officers to be authorized to intercept the wire communication are qualified by training and experience to execute the interception sought; (9) not more than thirty-four orders authorizing interception have been previously issued by all panels in the calendar year in which the application is made, except that upon a showing of an emergency situation in

These included the panel's express findings that there was probable cause to believe that the defendants and others unknown were committing the specified narcotics offenses, that interception of communications over both telephones would provide material evidence that those crimes were being committed, that "other normal investigative procedures with respect to the offenses have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ," and that both telephones were being used in the commission of the offenses.

In correspondence with subsection (7) of § 54-41d, the panel also expressly stated in item B (7) of its order that "one of the facilities from which the wire communication is to be intercepted is public and the other facility is not public." The order made no express reference, however, as to whether the panel had found probable cause to believe that a "special need exists to intercept wire communications over" the public telephone. See General Statutes § 54-41d (7).[8] In accordance with General Statutes § 54-41e,[9] the order concluded that "[t]his

which the commission of an offense enumerated in section 54-41b may result in imminent peril to public health, safety or welfare, such panel may issue additional orders authorizing interception."

[8] See footnote 7, supra.

[9] "[General Statutes] Sec. 54-41e. STATEMENT BY PANEL ON ISSUANCE OF ORDER. CONTENTS OF ORDER. Each order authorizing the interception of any wire communication shall be accompanied by a written statement of the issuing panel setting forth in detail its determination made in accordance with the provisions of section 54-41d and the grounds therefor and shall specify: (1) The identity of the person, if known, whose communications are to be intercepted; (2) the nature and location of the communication facilities as to which or the place where authority to intercept is granted; (3) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates; (4) the identity to the investigative officers authorized to intercept such wire communications; (5) the identity of the investigative or law enforcement officers to whom disclosure of the contents of any intercepted wire communiciation or any evidence derived therefrom may be made; (6) the use of which the contents of any intercepted wire communication or any evi-

order shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . and shall terminate upon attainment of the authorized objective . . . or in any event within 15 days next succeeding the date of issuance of this order." Thereafter, the investigators intercepted communications pursuant to orders 86-03 and 86-04. The investigators included conversations intercepted under all three orders in affidavits filed in support of the arrest warrant applications. The defendants subsequently were arrested and charged with the narcotics offenses.

Prior to trial, the defendants moved to suppress evidence obtained from the wiretap conducted pursuant to order 86-04. In their motions, Calash and Vallas spe-

dence derived therefrom may be put; (7) the identity of the person making the application and his authority; (8) the identity of the issuing panel and its authority to issue an order; (9) the period of time during which such interception is authorized, including a statement that the interception shall automatically terminate when the desired communication has been first obtained; (10) express authorization to make secret entry onto private premises to install any device, provided no such secret entry shall be authorized if there exists a practicable alternative method of executing the order which will preserve the secrecy of its execution; (11) the date of issuance of the order and its effective date. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception in accordance with the provisions of this chapter, and shall terminate upon attainment of the authorized objective, or in any event within fifteen days next succeeding the date of issuance of such order. An order authorizing the interception of a wire communication shall, upon request of the applicant, direct that a communication common carrier, landlord, custodian or other person shall furnish the applicant forthwith all information, facilities and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such carrier, landlord, custodian or person is according the person whose communications are to be intercepted. Any communication common carrier, landlord, custodian or the person furnishing such facilities or technical assistance shall be compensated therefor by the applicant at the prevailing rates."

cifically claimed that the wiretap order was unlawful because the panel had failed to make a finding that there was probable cause to believe that a "special need" existed to tap the public telephone. Vallas and Rogers also specifically claimed that order 86-04 was facially invalid since it contained no express finding of special need. The trial court rejected these arguments. It ruled that although the panel had found that the telephone was public, the panel was not required under §§ 54-41d or 54-41e to determine whether the subject facility is public or, if so, whether there is probable cause to believe that there is a special need to tap it. The court found, nevertheless, that the underlying affidavit, "incorporated in the order, contained sufficient facts to warrant a determination and finding by the panel of probable cause that a special need existed." It concluded that "[t]he nature and use of the public telephone in the small bar involved here clearly warranted the authorized interception."

On appeal to the Appellate Court, all defendants claimed that order 86-04 was facially invalid for failing to contain a written statement that the panel had found a "special need" to tap the public telephone. In addition, Girolomoni argued that the accompanying affidavit contained inadequate information to support a finding of probable cause of special need. *State* v. *Vallas,* supra, 16 Conn. App. 253–54. The Appellate Court rejected both claims, and affirmed the trial court's denial of the motions to suppress. It held that, although § 54-41d (7) requires the panel to find that there is probable cause "to believe that a special need exists to intercept wire communications over public facilities[, t]here is no statutory requirement contained . . . in that section or in § 54-41e . . . mandating a *written* finding of special need." (Emphasis added.) Id., 254–55. It ruled, further, that the "issuance of order 86-04 carries with it the implicit conclusion that

the statutory criteria [have] been met." Id., 256. The court also concluded that the affidavit submitted with the application for order 86-04 supported a finding of probable cause to believe that a special need existed to intercept the public telephone conversations. Id.

On certification to this court, the defendants renew their claim that §§ 54-41d and 54-41e require the wiretap panel to make an express written finding of "special need." According to this argument, § 54-41e requires, at a minimum, a pro forma written statement that fully tracks the statutory language of § 54-41d (1) through (9). The defendants argue, therefore, that the absence of a written finding of special need constitutes an "unlawful" and a "facially invalid" order requiring suppression under General Statutes § 54-41m,[10] even if the wiretap panel did, in fact, have probable cause to find a "special need." We are not persuaded.

Contrary to the trial court's conclusion, § 54-41d (7) plainly requires the issuing panel to find probable cause that a special need exists to intercept public facility

[10] "[General Statutes] Sec. 54-41m. MOTION TO SUPPRESS. Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state of Connecticut, or of a political subdivision thereof, may move to suppress the contents of any intercepted wire communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted under the provisions of this chapter; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval. Such motion shall be made before the trial, hearing or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion, in which case such motion may be made at any time during the course of such trial, hearing or proceeding. If the motion is granted, the contents of the intercepted wire communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter and shall not be received in evidence in any such trial, hearing or proceeding. The panel, upon the filing of such motion by the aggrieved person, shall make available to the aggrieved person or his counsel for inspection the intercepted communication and evidence derived therefrom."

communications. Cf. *State* v. *Chiarizio,* 8 Conn. App. 673, 678–79, 514 A.2d 370, cert. denied, 201 Conn. 809, 515 A.2d 379 (1986) (where nothing in affidavit indicates that facility was public, panel's order referring to finding of probable cause of special need "if applicable" did not render order facially invalid). That section provides that the panel may issue an ex parte order "authorizing the interception of wire communications . . . if the panel determines on the basis of the facts submitted by the applicant that there is probable cause to believe that . . . (7) if the facilities from which a wire communication is to be intercepted are public, a special need exists to intercept wire communications over such facilities."

Whether the panel's finding of probable cause under § 54-41d (7) must be in writing is less clear. The required contents of the panel's order are set forth in § 54-41e. "Each order authorizing the interception of any wire communication shall be accompanied by a written statement of the issuing panel setting forth in detail its determination made in accordance with the provisions of section 54-41d and the grounds therefor and shall specify: (1) The identity of the person, if known . . . ." Section 54-41e thereafter lists ten more items that the issuing panel must specify in its written order.[11] None of the eleven items specified in § 54-41e refers to the necessity of making a "written statement" that, if the subject facility is public, the panel has found probable cause of a special need to intercept such communications. Further, nothing in § 54-41d indicates that the probable cause finding of special need must be in writing. The defendants nevertheless argue that the prefatory language of § 54-41e, stating that the written statement shall set forth "in detail [the panel's] determination made in

---

[11] See footnote 9, supra.

accordance with the provisions of section 54-41d and the grounds therefor," establishes that the panel must make an express written statement of the finding of probable cause of special need under § 54-41d (7).

We find it unnecessary to address whether §§ 54-41d and 54-41e, when read together, require a *written* statement that the panel had found probable cause of a special need to intercept communications over a public telephone. Even if we assume that those sections do require such a written statement, we are persuaded that the absence of such a written statement in the present case does not require suppression under § 54-41m.

Section 54-41m provides in relevant part that "[a]ny aggrieved person . . . may move to suppress the contents of any intercepted wire communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted under the provisions of this chapter; [and] the order of authorization or approval under which it was intercepted is insufficient on its face . . . . "[12] In interpreting Connecticut's wiretapping statutes, this court has in the past relied on federal case law interpreting cognate provisions of the federal statutes relating to the interception of wire communications, 18 U.S.C. § 2510 et seq. See, e.g., *State* v. *Thompson,* 191 Conn. 360, 380, 464 A.2d 799 (1983), cert. denied, 465 U.S. 1006, 104 S. Ct. 999, 79 L. Ed. 2d 231 (1984); *State* v. *Assuntino,* 180 Conn. 345, 350–51, 429 A.2d 900 (1980); *State* v. *Grant,* 176 Conn. 17, 25, 404 A.2d 873 (1978). While it is true "that our own wiretap statute is in many ways more stringent than the federal act"; *State* v. *Thompson,* supra, 371; id., 372 (minimization provisions stricter); the lan-

---

[12] An aggrieved person may also move for suppression if "the interception was not made in conformity with the order of authorization or approval." General Statutes § 54-41m; see footnote 10, supra.

guage of the suppression sections in both is virtually identical. See 18 U.S.C. § 2518 (10) (a).[13] Thus, we are properly guided by federal interpretation of the parallel suppression provisions of the federal wiretap statutes. *State* v. *Grant,* supra.

The decisions of the United States Supreme Court and other courts demonstrate that suppression of otherwise relevant and admissible evidence for "unlawfulness" or "facial insufficiency" is not required for every facial defect in an interception order. See, e.g., *United States* v. *Donovan,* 429 U.S. 413, 433–34, 97 S. Ct. 658, 50 L. Ed. 2d 652 (1977); *United States* v. *Chavez,* 416 U.S. 562, 574–75, 94 S. Ct. 1849, 40 L. Ed. 2d 380 (1974); see also *United States* v. *Vento,* 533 F.2d 838, 860–61 (3d Cir. 1976); *United States* v. *Vigi,* 515 F.2d 290, 293 (6th Cir.), cert. denied, 423 U.S. 912, 96 S. Ct. 215, 46 L. Ed. 2d 140 (1975); cf. *State* v. *Quinn,* 436 N.W.2d 758, 767 (Minn. 1989). "[T]he United States Supreme Court [has] delineated the standard for suppression in terms of whether the breached statutory

---

[13] Title 18 of the United States Code, § 2518 (10) (a) provides: "Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

"(i) the communication was unlawfully intercepted;

"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

"(iii) the interception was not made in conformity with the order of authorization or approval.

"Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice."

requirement 'directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' *United States* v. *Giordano,* 416 U.S. 505, 527, 94 S. Ct. 1820, 40 L. Ed. 2d 341 [1974]; see also *United States* v. *Donovan,* [supra, 435]. In *United States* v. *Chavez,* [supra, 575] . . . the court determined that a failure to abide by a requirement which '[does] not affect the fulfillment of any of the reviewing or approval functions required by Congress' [does] not require suppression." *State* v. *Grant,* supra, 25. Further, as *State* v. *Grant* makes clear, this inquiry applies to all grounds for suppression under § 54-41m. Id.

On the basis of its analysis of *Giordano* and *Chavez,* the Massachusetts Supreme Judicial Court has articulated a more particularized test to determine whether suppression is warranted. "[T]he court's inquiry should be directed toward determining, among other things, whether the particular procedure involved is a central or functional safeguard to prevent abuses in electronic surveillance as opposed to a procedural or reporting mechanism; [*United States* v. *Chavez,* supra, 578]; whether the purpose that the particular procedure was designed to effect has been accomplished in spite of the error; (id. at 575); and, whether the statutory requirement was deliberately ignored and, if so, whether this was done to gain an unfair tactical advantage. (Id. at 572–73)." *Commonwealth* v. *Vitello,* 367 Mass. 224, 269–70, 327 N.E.2d 819 (1975); see also *United States* v. *Donovan,* supra, 434–35.

We first note that the defendants' motions to suppress on the ground that the "communication was unlawfully intercepted under" the wiretap statute is inapplicable to the present case. As in the federal statute, the "unlawful interception" and "facial insufficiency" grounds are distinctly stated in our wiretap statute,

and therefore contemplate distinct varieties of violations. See *United States* v. *Donovan,* supra, 432 n.22 (supression remedy provides alternative grounds of suppression); *United States* v. *Chavez,* supra, 575 (not every failure to follow statutory procedures requires suppression for "unlawful interception"; otherwise, grounds of facial insufficiency and nonconforming execution would be superfluous). There may be instances in which the form or execution of the order implicate more than one ground of suppression. The crux of the present defendants' argument, however, is that the absence of a written finding of probable cause to believe that a special need existed to tap a public telephone would require suppression even if there was, in fact, probable cause for such a belief. While the interception of communications without probable cause would constitute an "unlawful interception"; see *State* v. *Ross,* 194 Conn. 447, 481 A.2d 730 (1984); the absence of an express written probable cause statement, where probable cause does in fact exist, reasonably implicates only an "approval . . . which . . . is insufficient on its face." General Statutes § 54-41m.

Appyling the analysis of *Giordano* and *Chavez,* supra, we conclude that order 86-04's lack of a written statement concerning "special need" does not require suppression on the ground that the order was facially defective. There is no doubt that § 54-41d's requirement that the judicial panel find probable cause to believe that there is a special need to intercept public facility communications " 'directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' " *State* v. *Grant,* supra, quoting *United States* v. *Giordano,* supra; see *State* v. *Ross,* supra, 459–60 (panel's determination of probable cause under § 54-41d is subject to "penetrating review" since probable cause

requirement expresses legislature's efforts to fully protect implicated privacy values). The requirement of a *written* determination of such a finding, however, surely is more akin to a procedural or reporting mechanism than to a substantive limitation. *Commonwealth* v. *Vitello,* supra. Further, while a written finding of special need provides some indication of the panel's findings, we are not persuaded that the absence of such a written statement impairs " 'the fulfillment of any of the reviewing or approval functions [of the authorizing entity] required by Congress' . . . ." *State* v. *Grant,* supra, quoting *United States* v. *Chavez,* supra. The wiretap panel's factual determination that there is probable cause to believe that a special need exists to tap a public facility necessarily precedes its entry of any written statement under § 54-41e. On the other hand, the existence of a written statement of special need alone does not ensure that there was, in fact, probable cause to believe that a special need existed to tap a public facility. Cf. *State* v. *Ross,* supra.

We further note that the absence of such a finding is fundamentally different from the absence of a written statement in the order directing the investigators to minimize interceptions or to terminate interceptions at the required time. Cf. *State* v. *Thompson,* supra. There can be no question that the minimization and termination provisions—provisions expressly required to be in writing under § 54-41e—implement substantive limitations on the execution of this "extraordinary investigative device." *United States* v. *Giordano,* supra. Assuming, however, that the supporting material and affidavits in any particular case support a finding of probable cause to believe that a special need exists to tap a public telephone, the added requirement of a "written statement" reflecting that finding has no impact on whether "this extraordinary device" has

been appropriately authorized. Further, such a written finding obviously places no conditions on the execution of the order.

Even if we assume that a written statement of the required § 54-41d (7) finding is a "central or functional safeguard to prevent abuses in electronic surveillance"; *Commonwealth* v. *Vitello*, supra; it is apparent that the purposes of a written finding of special need were fully satisfied in this case, despite the absence of such a written statement. *United States* v. *Chavez*, supra, 575; *Commonwealth* v. *Vitello*, supra. "The purpose of the statutory requirement that the panel set forth in detail its grounds for the issuance of the order is two-fold: (1) to ensure that the panel will give its full attention to the issue of whether an order should issue; and (2) to permit a reasonable review by the trial court or an appellate court of the propriety of the order." *State* v. *Chiarizio*, supra, 683. In the present case, the Appellate Court held that the panel's issuance of order 86-04 carried "with it the implicit conclusion that the statutory criteria [have] been met." *State* v. *Vallas*, supra, 16 Conn. App. 256. While we agree with the defendant that uniform application of this proposition would effectively negate the language of § 54-41e requiring a "written statement . . . setting forth in detail [the] determination made in accordance with . . . section 54-41d and the grounds therefor," we need not rely on so far-reaching a rationale.

As noted above, the panel's written statement in the order did "track" the language of § 54-41d, and the findings made in the order corresponded to the statute's numbering system. In item (B) (7) of the order, the panel stated that "one of the facilities from which the wire communication is to be intercepted is public and the other facility is not public." Although that written statement did not "track" verbatim the language of § 54-41d (7) respecting "special need," the panel's

indication in item (B) (7) of its order that one of the facilities was public is strong inferential evidence that the panel was aware of the requirements of § 54-41d (7) and made the proper findings. Cf. *Rosenblit* v. *Danaher,* 206 Conn. 125, 134, 537 A.2d 145 (1988) (unless contrary appears, appellate court entitled to presume that trial court acted properly, "including considering the applicable legal principles").[14] Under these circumstances, we cannot conclude that the panel's failure to state in writing that it had found a "special need" undermined the statute's objective of ensuring that the panel give plenary consideration to the pertinent probable cause inquiries.

This conclusion is reinforced by the record, which adequately supports a finding of probable cause to believe that a special need existed to tap the public telephone. In stating that a written statement of the § 54-41d findings enables the trial court or an appellate court to review the panel's actions, the Appellate Court in *State* v. *Chiarizio,* supra, recognized that the legality of the order must be evaluated in light of the affidavits submitted in support of the wiretap application. *State* v. *Ross,* supra, 460–68 (testing sufficiency of wiretap order by reference to underlying affidavit). In the

[14] In observing that the panel's reference in item (B) (7) of its order to the public nature of the facility is inferential evidence that the panel made the appropriate finding, we do not abrogate the well established rule that this court does not make findings of fact on appeal. See *State* v. *Copeland,* 205 Conn. 201, 208 n.3, 530 A.2d 603 (1987). In connection with this inferential evidence of the trial court's finding, we recognize that, "[w]hen the [judicial authority] has exercised the authority thus conferred upon it, either expressly or implicitly, we have usually deferred to its judgment. We have even, on occasion, searched the record for support for the trial court's judgment, when its factual underpinnings were not clearly articulated." Id., 215 (*Peters, C. J.,* dissenting). Thus, this is not a case in which we "bypass entirely the role of the trial court in finding so crucial a . . . fact as probable cause." Id. We simply recognize that the absence of a *written* finding of probable cause is not, in every circumstance, tantamount to the nonexistence of an actual finding of probable cause.

present case, Schaeffer and Nobile asserted in their affidavit that, through their own investigation and from information given to them from other police officers, they had concluded that Girolomoni and Calash were engaged in the sale of narcotics with others using the two telephones in the Rendezvous Cafe. The affiants also disclosed that they had previously set up a "controlled buy" with Girolomoni to take place at the cafe, and that the controlled buy subsequently did, in fact, take place there. Pursuant to wiretap order 86-01, investigators intercepted five telephone calls made from the public telephone to Calash's residence over four days in early February, 1986. Further, on two occasions, an undercover police officer working in the cafe answered the public telephone, during which the caller had asked for Girolomoni. In addition, Robert Iaquessa, a "door man" at the cafe, had been identified as involved in narcotics conversations intercepted under order 86-01. On the basis of these facts, we agree with the Appellate Court that the trial court did not err in determining that the affidavit supported a finding of probable cause to believe that there was a special need to intercept communications over the public telephone. See *State* v. *Vallas,* supra, 16 Conn. App. 257.

Finally, there is nothing in the record to indicate that the affiants attempted to disguise the fact that one of the target telephones in the cafe was a public telephone, or that any unfair tactical advantage was either attempted or gained. *United States* v. *Chavez,* supra, 572–73; *Commonwealth* v. *Vitello,* supra. Indeed, in addition to disclosing that the telephone was public, the affiants informed the panel that the general public routinely used the telephone. Accordingly, the affiants established that "interceptions of conversations on [the public] facility . . . will only be conducted when it can

be established that one or more of the principals named in the affidavit are on the premises of the Rendezvous Cafe . . . or that an incoming call is being made by one of the principals named in this affidavit. . . . No interception of conversations over [the public] facility . . . will be made unless those requirements are fulfilled." Further, as noted above, the wiretap panel's order directed the investigators to comply with the minimization provisions of the wiretap statute.

The defendants included in their motions to suppress the claim that investigators failed "to properly minimize non-pertinent telephone conversations occurring over . . . public telephones." The trial court found, however, that in executing order 86-04, the investigators only monitored calls on the public telephone when a principal was present at the cafe. The defendants did not appeal from the trial court's denial of their motions on the ground of improper minimization. See *State* v. *Vallas,* supra, 16 Conn. App. 250–51. We agree with the defendants that the "minimization" requirements of the statute are distinct from the "special need" requirement regarding public facilities. We are persuaded, however, that actual attainment of the privacy objectives implicit in § 54-41d's requirement of "special need" to tap a public facility is relevant in determining whether the absence of a written statement of a finding of "special need" constitutes reversible error. *United States* v. *Chavez,* supra; *Commonwealth* v. *Vitello,* supra; cf. *State* v. *Thompson,* supra, 364, 380–81 (holding that state's effort or lack of effort to minimize interceptions will have impact on whether evidence should be suppressed in part or in toto).

Accordingly, we conclude that the Appellate Court did not err in holding that the wiretap panel's failure to make a written determination of special need under § 54-41d (7) was not reversible error.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, COVELLO and SANTANIELLO, Js., concurred.

PETERS, C. J., with whom SHEA and HULL, Js., join dissenting. I respectfully dissent. Our legislature has enacted wiretap statutes that impose strict limitations on electronic surveillance. Until today, we have regularly obeyed both the letter and the spirit of these statutes, requiring strict compliance with their procedural and substantive mandates. *State* v. *Ross,* 194 Conn. 447, 458–59, 481 A.2d 730 (1984); *State* v. *Thompson,* 191 Conn. 360, 372, 464 A.2d 799 (1983), cert. denied, 465 U.S. 1006, 104 S. Ct. 999, 79 L. Ed. 2d 231 (1984); *State* v. *Assuntino,* 180 Conn. 345, 349, 429 A.2d 900 (1980); *State* v. *Grant,* 176 Conn. 17, 25–26 n.3, 404 A.2d 873 (1978). No reason has been advanced why, in this case, we should depart from this well-beaten path.

The statutes that are involved in these proceedings contain unmistakable instructions for the issuance of wiretap orders. Three features of these statutes are of particular significance: (1) the issuance of wiretap orders requires a judicial determination of probable cause by the unanimous vote of a three judge panel; General Statutes §§ 54-41b, 54-41d; (2) a wiretap order for a public telephone requires a judicial determination of probable cause that "a special need exists to intercept wire communications over such facilities"; General Statutes § 54-41d (7); and (3) wiretap orders must be "accompanied by a written statement *of the issuing panel* setting forth *in detail* its determination made in accordance with the provisions of section 54-41d *and the grounds therefor* . . . . " (Emphasis added.) General Statutes § 54-41e.

The statement of the wiretap panel that issued order 86-04 did not, on its face, comply with these statutory

provisions. Although the panel's statement tracked the other requirements of § 54-41d, with respect to § 54-41d (7), it made no mention whatsoever of a special need to intercept, noting only that "one of the facilities from which the wire communication is to be intercepted is public and the other is not public." Despite this obvious deviation from the mandates of §§ 54-41e and 54-41d (7), the majority opinion concludes that the wiretap order was nonetheless valid and enforceable. I disagree.

The majority opinion assigns great weight to its conclusion that the affidavits presented to the wiretap panel would have established a factual foundation of a finding of probable cause that there was a special need to wiretap a public telephone. I think this argument puts the cart before the horse. If the issue were simply the sufficiency of the affidavits, then the role of the judicial panel that issues wiretap orders would be that of ministerial functionaries, charged only with checking out the investigatory enterprise of the police. That is not the law. This court, and the Supreme Court of the United States, have repeatedly emphasized the significance of the interposition of an *independent* judicial determination that particularized circumstances warrant a search and seizure that would otherwise be constitutionally suspect. *United States* v. *United States District Court for the F.D. of Michigan, S.D.,* 407 U.S. 297, 317, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972); *Katz* v. *United States,* 389 U.S. 347, 356–57, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State* v. *Thompson, supra,* 376; *State* v. *Assuntino, supra,* 352. The question before us is what the wiretap panel did and not what it might have done.

The majority opinion concludes that the statutory mandate for a written finding of a special need to wiretap a public telephone is not especially compelling because the statutory requirement is more procedural

than substantive. We have, however, strictly construed even the purely procedural requirements of our wiretap statutes, such as the need to produce affidavits under oath. *State* v. *Assuntino,* supra, 352–54; *State* v. *Grant,* supra, 26. Further, the legislature was entitled, as a matter of public policy, to decide that the wiretap of a public telephone carried with it a significant potential for intrusion into private conversations unrelated to the crime or crimes that the police were legitimately investigating. Balancing the risk of unwarranted intrusion against the risk of undue interference with criminal investigations, the legislature chose to impose a requirement for public telephone wiretaps that went beyond the requirements that otherwise govern the electronic interception of communications. I would characterize this legislative mandate as imposing a substantive constraint on the issuance of a wiretap order. Whatever the proper characterization, however, the imposition of an additional constraint bears evidence of a legislative differentiation between an ordinary wiretap and a public telephone wiretap to which, under familiar principles of statutory construction, we must defer. *Maher* v. *Roe,* 432 U.S. 464, 479, 97 S. Ct. 2376, 53 L. Ed. 2d 484 (1977); *State* v. *Bunkley,* 202 Conn. 629, 640, 572 A.2d 793 (1987); *State* v. *Wright,* 198 Conn. 273, 282, 502 A.2d 911 (1986).

Finally, the language employed by the wiretap panel in issuing order 86-04 manifests no awareness of its statutory obligation to make a reasoned determination of a special need to wiretap a public telephone. I am entirely unpersuaded that the panel's statement that "one of the facilities from which the wire communication is to be intercepted is public" is the functional equivalent of a "written statement . . . setting forth in detail . . . [the] determination" that "a special need exists to intercept wire communications over [public] facilities." General Statutes §§ 54-41e, 54-41d (7). More

likely, the panel's statement merely reflected the affiants' disclosure of the public nature of one of the telephones that the police sought to wiretap. This disclosure should have triggered a further inquiry into "special need," but there is no "written evidence" that it did so. Our customary strict construction of the mandates of our wiretap statutes requires the conclusion that this wiretap order was defective.

For these reasons, in my view the Appellate Court should have found error in the trial court's denial of the defendants' motions to suppress the evidence of communications obtained pursuant to wiretap order 86-04 insofar as those communications were intercepted from a public telephone. Accordingly, I dissent.