STATE OF CONNECTICUT *v.* RUBEN DIAZ
(10389)

DUPONT, C. J., O'CONNELL and NORCOTT, Js.

Argued February 10—decision released April 28, 1992

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Bernadette Conway,* assistant state's attorney, for the appellant (state).

*Adam J. Teller,* deputy assistant public defender, with whom, on the brief, was *Richard Kelly,* public defender, for the appellee (defendant).

NORCOTT, J. The sole issue of this appeal is whether the trial court improperly ruled that a warrant for the search of the defendant's house was insufficient to establish probable cause to believe narcotics and narcotic paraphernalia would be found there. After the trial court granted the defendant's motion to suppress, the state represented that prosecution of the defendant for the crime of possession of cocaine with intent to sell could not proceed without the suppressed evidence. Accordingly, the trial court dismissed the case and granted the state leave to appeal pursuant to General Statutes § 54-96.

The following facts are relevant to the disposition of this appeal. On April 2, 1990, the police submitted an affidavit and application for a search warrant to the Superior Court, requesting authorization to search the defendant's house at 36 Clinton Avenue in Old Saybrook. The items sought under the warrant were cocaine, cocaine related paraphernalia and other items commonly used in drug related transactions. The court,

*Gormley, J.,* reviewed and approved the warrant application. That application included the affidavit of Trooper Chester Harris of the state police statewide narcotics task force, and Officer Cliff Barrows of the Old Saybrook police department.

The following information contained in the affidavit is relevant to the disposition of this appeal. On the basis of information obtained from known, reliable informants together with evidence obtained through controlled narcotic buys, the affiant police officers asserted that Benjamin Perez and the defendant had been jointly engaged in the dealing of narcotics, principally cocaine, since the early part of 1990. Perez' house at 34 Clinton Avenue in Old Saybrook had been the subject of a search and seizure warrant on or about August 18, 1989, when a gun, packaging material for narcotics, a scale and cash, which had been part of a controlled buy, were found there. According to the information in the affidavit from Harris and Barrows, a reliable informant first implicated the defendant in Perez' narcotics business as a "relative [who] cooperated with Benji [Perez] in the sale of narcotics" during the month of December, 1989. The defendant resides at 36 Clinton Avenue in Old Saybrook. The affidavit goes on to reveal that the defendant allegedly was first seen taking part in a drug transaction during the first week of March, 1990, when he collected money for the purpose of buying cocaine and then turned this money over to Perez, who then took the purchasers to his house at 34 Clinton Avenue.[1]

The second time the defendant is specifically alleged to have been involved in drug transactions occurs in paragraph fourteen of the affidavit. There, a known

---

[1] It is unclear from paragraph eleven in the affidavit, from which these allegations derive, whether the informant observed the transaction inside the defendant's house at 36 Clinton Avenue or what precisely occurred at Perez' house.

informant alleges that, between March 19 and March 26, 1990, he first engaged in a "narcotics related conversation" with the defendant at the defendant's house, where he had entered under police surveillance. Following this conversation, another "Hispanic male" brought cocaine from 34 Clinton Avenue to the defendant's house.

The third occasion of the defendant's activity with Perez is discussed in paragraph sixteen. Again, an informant with police money who was under surveillance met the defendant at 36 Clinton Avenue. Thereafter, a "Hispanic male from 34 Clinton Avenue" brought cocaine from that address to the defendant's house and sold the drugs to the informant.

During oral argument on the motion to suppress, the defendant successfully contended that the warrant application failed to establish probable cause to believe that narcotics and paraphernalia were present in the defendant's house. The trial court, *Hendel, J.,* agreed with the defendant that the information in the warrant failed to establish a sufficient nexus between the cocaine itself and the defendant's house. We disagree.

The standards that apply to the proper issuance of a warrant to search any property are well established and have been concisely set forth in our recent decision in *State* v. *Castano,* 25 Conn. App. 99, 100–101, 592 A.2d 977 (1991). These standards can be summarized as follows: (1) there must be probable cause that fruits, instrumentalities or evidence of a crime will be found in the place to be searched; (2) "probable cause to search" exists if (a) the items sought are connected with criminal activity or will assist in a particular apprehension or conviction, and (b) there is probable cause to believe that the items sought to be seized will be found in the place to be searched; (3) the existence of probable cause is determined by the facts stated in the

supporting affidavit; (4) a review of the sufficiency of the affidavit is confined to the facts appearing on the face of the warrant or facts that may reasonably be inferred therefrom; (5) we test those facts with common sense and reality; and (6) we accord great deference to the fact that the issuing magistrate *did* determine that probable cause existed. Id. "In reviewing the sufficiency of an affidavit supporting the application for a search warrant we do not conduct a de novo review, but determine whether the court had a substantial basis for concluding that a search would uncover evidence of a crime." Id., 101. Further, the grounds for the search, as asserted in the affidavit, "must satisfy *objective* standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vallas,* 16 Conn. App. 245, 261, 547 A.2d 903 (1988), aff'd sub nom. *State* v. *Calash,* 212 Conn. 485, 563 A.2d 660 (1989).

The defendant argues that our Supreme Court's decision in *State* v. *DeChamplain,* 179 Conn. 522, 427 A.2d 1338 (1980), is dispositive of the present case in that here, as in *DeChamplain,* the recitation of facts in the application and affidavit in support of the search warrant was insufficient to connect his house with the drugs. We disagree.

"In *DeChamplain,* the court found a lack of probable cause to believe that drugs were located in the defendant's apartment, because the only fact establishing a nexus to the apartment was a single telephone call to the defendant at his apartment in which he received an order for the purchase of drugs." *State* v. *Brown,* 14 Conn. App. 605, 619, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988). This case is quite distinguishable from *DeChamplain.* Here, the documentation supporting the warrant application clearly established an ongoing connection and relation-

ship between the defendant and Benjamin Perez, his neighbor. While it was not a paragon of craftsmanship, the affidavit was not fatally imperfect. Perfection in the drafting of affidavits and applications for warrants is not what the law demands. The affidavit asserted that narcotic transactions were negotiated in the defendant's house and that the defendant had been the conduit for the money in one of those transactions. In two other transactions, those referred to specifically in paragraphs fourteen and sixteen of the affidavit, the defendant's conversations and initial contact with the informant led to cocaine being brought to the defendant's home to be purchased there. Given the information presented to the issuing judge, it is clear that Perez and the defendant, next door neighbors, were engaged in an ongoing drug business that operated between their two homes at 34 and 36 Clinton Avenue. Accordingly, the affidavit provided the requisite probable cause to issue a warrant. Drugs for the purpose of sale clearly were in the defendant's house on more than one occasion. Indeed, it would be a hypertechnical reading of the affidavit not to draw a reasonable inference that the defendant's house was a situs of drug transactions. It is equally hypertechnical to regard as fatal the lack of a reference in the warrant by the police to an actual observation of drugs, which were not from the 34 Clinton Avenue source, inside the defendant's house.

"Actual observations of illegal activity or contraband in the premises to be searched . . . are not required to establish probable cause. . . . The nexus between the premises and the evidence can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [the evidence]." (Citations omitted; internal quotation marks omitted.) *State* v. *Castano,* supra, 103–104, quoting *State* v. *Cou-*

*ture,* 194 Conn. 530, 537, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). We have on several occasions concluded that "[i]n dealing with large scale drug conspiracies, it is reasonable to conclude that the *participants* will maintain certain records and supplies in their homes." (Emphasis added.) *State* v. *Vallas,* supra, 262. We also have adopted an established federal principle that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." (Internal quotation marks omitted.) *State* v. *Castano,* supra, 104, quoting *United States* v. *Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir. 1986); *United States* v. *Reyes,* 798 F.2d 380, 382 (9th Cir. 1986); *United States* v. *Peacock,* 761 F.2d 1313, 1315–16 (9th Cir.), cert. denied, 474 U.S. 847, 106 S. Ct. 139, 88 L. Ed. 2d 114 (1985); *State* v. *Vallas,* supra. It is clear that in this case, probable cause was established to show that the defendant was engaged in an ongoing drug business.

Finally, the defendant urges that a ruling against him will assault the fourth amendment's proscription against unreasonable searches and seizures by allowing police to search any place with which a person might have even the most tenuous association. With full appreciation of the sanctity of a person's house, a concept that is the essence of that constitutional amendment; *Warden* v. *Hayden,* 387 U.S. 294, 301, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); *State* v. *Marsala,* 216 Conn. 150, 164, 579 A.2d 58 (1990); *State* v. *Guertin,* 190 Conn. 440, 453, 461 A.2d 963 (1983); we find only that, on the facts of this case, the issuing court had a substantial basis from the facts included within the four corners of the application for the search warrant to conclude there was probable cause that the defendant's house contained the evidence of criminal activity sought by the police. Our opinion is not to be construed as an

open invitation to search any place, residence or otherwise, with which any person suspected of criminal activity has only minimal contacts.

"[W]hen a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." *State* v. *Barton,* 219 Conn. 529, 545, 594 A.2d 917 (1991). In determining whether probable cause exists to conduct a search, we apply the "totality of the circumstances" test, which our Supreme Court recently adopted in *State* v. *Barton,* supra, where it overruled *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). *State* v. *Anziano,* 26 Conn. App. 667, 671, 603 A.2d 415 (1992). "In a doubtful or marginal case, however, our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination." *State* v. *Johnson,* 219 Conn. 557, 565, 594 A.2d 933 (1991); *State* v. *Anziano,* supra, 672. Our role is to determine whether the affidavit here presented a substantial basis for the issuing judge's conclusion that probable cause existed. *State* v. *Anziano,* supra. We conclude that the warrant at issue was sufficient with respect to its allegations of probable cause and, accordingly, the trial court improperly found otherwise.

The judgment is reversed and the case is remanded with direction to deny the motion to suppress.

In this opinion the other judges concurred.