[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
 I. FACTUAL AND PROCEDURAL BACKGROUND
The defendant moves to suppress all physical evidence and oral and written statements following a stop of his motor vehicle and a search of his premises pursuant to warrants. Specifically, the defendant alleges that the New Britain Police Department did not have reasonable and articulable suspicion to justify a stop of his vehicle, the search of the garage on 205-207 Bassett Street was performed before a search warrant was obtained, and the affidavit in support of the search warrant for his residence at 116 Lowell Street lacked probable cause.
In July of 2001, a confidential informant contacted Officer Christopher Brody of the New Britain Police Department and informed him that a man named Victor, subsequently identified as the defendant, was selling cocaine, marijuana and ecstasy. He indicated that the defendant resided at 116 Lowell Street in New Britain and the narcotics were stored in a garage at 205-207 Bassett Street in New Britain which was owned by the defendant. He subsequently took Officer Brody to these two properties and pointed out the automobile that the defendant drives. He stated that he had purchased narcotics from the defendant through a third person.
On August 8, 2001, the New Britain Police Department conducted a controlled purchase of narcotics involving the defendant and the informant. The informant provided the intermediary, a man named Andy, with money provided by the police. Andy then met with the defendant at 205-207 Bassett Street. They went into the garage for a few minutes and then left. Andy drove back and provided the informant with cocaine. The defendant returned to his residence at 116 Lowell Street. All of these activities were monitored by the New Britain Police Department.
On August 9, 2001, the New Britain police were conducting surveillance of 205-207 Bassett Street when the defendant's vehicle was seen entering CT Page 13246 the driveway. He went into the garage for a short period of time, got back into his vehicle, and then attempted to leave. His vehicle was blocked by a police car and he was subsequently arrested after a plastic baggie containing cocaine was seen sticking out of his pocket.
Warrants were obtained to search the garage at 205-207 Bassett Street as well as the defendant's residence at 116 Lowell Street. A search of the garage primarily produced quantities of narcotics and related paraphernalia. A search of the defendant's residence produced large amounts of cash, a small amount of narcotics, a cellular phone, a bank statement, a water bill, and a rental agreement.
The defendant filed his motion to suppress tangible evidence on February 6, 2002. He filed his amended motion to suppress tangible evidence and written and verbal statements on March 1, 2002. A hearing was held on July 15, 2002 and was continued on July 17, 2002 and July 19, 2002. The defendant filed his memorandum of law in support of the motion to suppress on August 30, 2002. The state filed its memorandum in opposition to the motion to suppress on September 13, 2002. Argument was heard on September 27, 2002.
 II. DISCUSSION
The defendant's first argument is that the police did not have reasonable and articulable suspicion to justify a stop of his vehicle. He argues that "the law enforcement officers were not armed with either an arrest warrant or a search warrant, were not participating in a controlled buy, had received no information that a buy was occurring and did not see the defendant do anything that would suggest a crime had just occurred, was occurring or was about to occur." Defendant's Memorandum of Law in Support of Amended Motion to Suppress Tangible Evidence and Written and/or Verbal Statements Made by the Defendant (hereinafter Defendant's Memorandum), p. 19.
"[E]ffective crime prevention and detection . . . [underlie] the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (Internal quotation marks omitted.) State v. Lipscomb,258 Conn. 68, 76, 779 A.2d 88 (2001). "Under both the federal and state constitutions, police may detain an individual for investigative purposes if there is a reasonable and articulable suspicion that the individual is engaged or about to engage in criminal activity." (Internal quotation marks omitted.) State v. Lewis, 60 Conn. App. 219, 238, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000). "Reasonable and CT Page 13247 articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . The police officer's decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) State v. Hammond, 257 Conn. 610,617, 778 A.2d 108 (2001). "A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Internal quotation marks omitted.) State v.Turner, 62 Conn. App. 376, 398-399, 771 A.2d 206 (2001). "Once a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect to confirm or dispel his suspicions." (Internal quotation marks omitted.) State v. Lewis, supra, 238.
The police in the present case were conducting surveillance outside of 205-207 Bassett Street when they saw the defendant pull into the driveway and enter the garage. They previously had received information from an informant who had been reliable in the past that the defendant was using this area as a "stash house" for narcotics and that he had previously purchased narcotics from the defendant through an intermediary. They previously observed the defendant making quick visits to the garage on several occasions. The day prior to the stop, they conducted a controlled purchase of narcotics involving the defendant and the informant. The defendant was observed driving to 205-207 Bassett Street, entering the garage with the informant's intermediary, exiting after a few minutes, and returning home while the intermediary delivered the narcotics to the informant. Based upon the informant's tip and their own observations, the New Britain police had reasonable and articulable suspicion that the defendant had just taken narcotics from the garage and was attempting to deliver them. The police were justified in stopping the defendant's vehicle and further investigating this possible criminal activity.
The defendant further argues that "[a]ssuming, arguendo, that the investigatory stop was authorized . . . [t]here is no credibility to Detective Steck's testimony that the defendant was making a furtive movement and therefore, based on the collective testimony, no reasonable suspicion existed to justify a pat-down. The police must have a reasonable suspicion in order to justify a pat-down during an investigatory stop. . . . Accordingly, any statements claimed to have been made by the defendant subsequent to his arrest must be suppressed." CT Page 13248 (Citation omitted.) Defendant's Memorandum, p. 20.
After the stop of the defendant's vehicle, Detective Steck escorted the defendant out of the car. Detective Steck noticed a piece of plastic hanging out of the defendant's pocket. He testified that based upon his training and experience, he knew that this was how cocaine is packaged for sale on the street. The item was seized and a field test indicated the presence of cocaine. At this point, reasonable suspicion ripened into probable cause to arrest the defendant for possession of narcotics. "Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed." (Internal quotation marks omitted.) State v. Clark, 255 Conn. 268, 292, 764 A.2d 1251
(2001). See State v. Nieves, 65 Conn. App. 212, 216-17, 782 A.2d 203
(2001) ("the police need not ignore incriminating evidence in plain view while . . . entitled to be in a position to view the items seized" [internal quotation marks omitted]). See also State v. Clark, supra, 278-79 ("[o]nce it was apparent to [the officer] that the bulge in the defendant's sock was crack cocaine, he had probable cause to arrest the defendant and seize the contraband"); State v. Eady, 249 Conn. 431, 442,733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S.Ct. 551, 145 L.Ed.2d 428
(1999) ("[i]t is by now common knowledge that cocaine is often packaged as a white powder in small plastic bags" [internal quotation marks omitted]). Therefore, the evidence was seized after Detective Steck saw the plastic baggie in plain view and not as a result of a pat-down search.
The defendant's second argument is that "[t]he collective evidence elicited at the hearing together with appropriate inferences drawn from that evidence establishes by clear and convincing evidence that one or more of the law enforcement officers opened the locked gate and entered the garage at 205-207 Bassett Street before the search warrant for that location had been obtained." Defendant's Memorandum, p. 20.
Officer Chrostowski testified that he wasn't aware of anyone entering the fenced-in area before a search warrant was procured and he first entered after the search warrant was obtained. Officer McAloon testified that the garage wasn't searched until after a search warrant was prepared and signed. Detective Steck testified that, to the best of his knowledge, no one opened the gate until the search warrant was secured. Captain Sullivan testified that nobody went on the other side of the fence until he unlocked the gate and he didn't open the gate until after the search warrant was signed. Although there are some inconsistencies as to the timing of certain events, the Court credits the testimony of the CT Page 13249 officers that no one entered the garage until a search warrant had been secured.
The defendant's third argument is that "[t]he search of 116 Lowell Street was illegal in that the affidavit and warrant lacked probable cause" and "failed to demonstrate a sufficient nexus to the particular location to be searched." Defendant's Memorandum, pp. 23-24. He also argues that "the affiants' opinions that items relating to illegal substances would be found at 116 Lowell Street lack credibility. The very items that the affiants, under oath, claimed they had probable cause to believe were `within or upon' 116 Lowell Street were also claimed by the affiants, under oath to be `within or upon' the garage at 205-207 Bassett Street." Id. 24.
All of the facts in both affidavits concerning narcotic activities were in regard to the garage at 205-207 Bassett Street. The warrant for the garage primarily authorized the search for cocaine, cutting agents, paraphernalia, electronic devices, monies and financial documents. The defendant does not challenge this warrant. The search warrant for 116 Lowell Street did not seek narcotics or related paraphernalia. It primarily authorized the search for electronic devices, monies, and financial documents. The affidavit for this warrant states that the informant indicated the defendant resides at 116 Lowell Street, his vehicle was parked there after the controlled purchase on August 8, 2001 was completed, and that "the affiants have found through training and experience that persons who sell illegal drugs often possess banking instruments (i.e. bankbooks, safes and safe deposit box keys) for the purpose of concealing drug assets/proceeds from law enforcement and the possible subsequent seizure thereof"
"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity; and (2) there is probable cause to believe that the items named will be found in the place to be searched." (Internal quotation marks omitted.) State v. Marsala, 42 Conn. App. 1, 6,679 A.2d 367, cert. denied, 239 Conn. 912, 682 A.2d 1010 (1996). "[I]n determining the adequacy of an affidavit in support of a search warrant, the information to establish probable cause must be found within the affidavit's four corners." State v. Colon, 230 Conn. 24, 34, 644 A.2d 877
(1994). "If a warrant affidavit does not provide a substantial basis for the finding of probable cause, then evidence or contraband seized in the execution of that warrant will be suppressed, even when the officer executing the warrant has relied in good faith on its authority." (Internal quotation marks omitted.) State v. Marsala, supra, 6. "A reviewing court should not invalidate a warrant as long as the inferences CT Page 13250 drawn by the issuing magistrate are reasonable under all of the circumstances set forth in the affidavit regardless of whether that court would have drawn the same inferences." Id. 9.
"Actual observations of illegal activity or contraband in the premises to be searched . . . are not required to establish probable cause. . . . The nexus between the premises and the evidence can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [the evidence]." (Internal quotation marks omitted.) State v.Diaz, 27 Conn. App. 427, 432, 607 A.2d 439 (1992), aff'd, 226 Conn. 514,628 A.2d 567 (1993). "In dealing with large scale drug conspiracies, it is reasonable to conclude that the participants will maintain certain records and supplies in their homes. . . . And, ordinarily, a conspiracy to sell drugs, such as is manifest here, involves a course of conduct which continues over a long period of time. . . . Indeed, it is usually considered to be a regenerating activity. . . . When a suspect has been carrying on an illegal activity for an extended period of time without detection, it is reasonable to conclude that evidence of his activity will be secreted in his home." (Citations omitted; internal quotation marks omitted.) State v. Vallas, 16 Conn. App. 245, 262, 547 A.2d 903
(1988), aff'd sub nom. State v. Calash, 212 Conn. 485, 563 A.2d 660
(1989). "[I]n the case of drug dealers, evidence is likely to be found where the dealers live." (Internal quotation marks omitted.) State v.Diaz, supra, 433.
The affidavit discloses that the defendant was involved in selling narcotics during the months of July and August of 2001. One of the affiants, Officer Chrostowski, monitored the controlled purchase on August 8, 2001 and witnessed the activity at the garage on Bassett Street. This Court concludes that it is a reasonable inference that evidence of the defendant's suspected narcotic sales would be found in his home. The fact that the affiants sought financial records, monies and electronic devices in both the garage and the defendant's residence does not vitiate probable cause and does not indicate that the affiants were merely speculating. See State v. Ives, 37 Conn. App. 40, 46, 654 A.2d 789, cert. denied, 234 Conn. 906, 659 A.2d 1209 (1995) ("[i]t was reasonable for the magistrate to conclude that the coins would be stored either among the defendant's collections at his residence or among the items for sale at his business, and, accordingly, probable cause existed to search both places"); see also State v. Diaz, supra, 27 Conn. App. 434 ("[i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination" [internal quotation marks omitted]). CT Page 13251
 III. CONCLUSION
Based upon the foregoing analysis, the defendant's motion to suppress tangible evidence and written and verbal statements is denied.
Dated at New Britain, Connecticut this eighteenth day of October 2002.
BY THE COURT,
Owens, J. CT Page 13252